**Joseph Alton BOWERS,**
**Plaintiff-Appellant,**

v.

**CONTINENTAL INSURANCE COMPA-**
**NY, Defendant-Appellee.**

**Nos. 83–8787, 84–8084.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1985.

Ronald Arthur Lowry, Atlanta, Ga., for plaintiff-appellant.

William S. Sutton, Atlanta, Ga., for defendant-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

Albert J. HENDERSON, Circuit Judge:

Joseph Alton Bowers sued the Continental Insurance Company (Continental) to recover certain optional personal injury protection (PIP) benefits allegedly due him under two no-fault policies issued by Conti-nental. The United States District Court for the Northern District of Georgia granted Continental's motion for summary judgment and motion to strike Bowers' request for attorney's fees, statutory penalties and punitive damages. We affirm.

Bowers is covered by two Continental no-fault insurance policies, each providing $5,000.00 in basic and $45,000.00 in optional PIP coverage. On August 24, 1981, while riding in a truck insured by the Aetna Insurance Company (Aetna), he was involved in an accident as the result of which he incurred over $100,000.00 in medical expenses.

Aetna paid to Bowers $43,750.00 in PIP benefits.[1] During negotiations, Continental took the position that Bowers' total PIP recovery from Continental and Aetna could not exceed $50,000.00, the greatest amount of coverage available under any one of the policies.[2] Because Continental originally believed that Aetna paid the amount of $50,000.00, it claimed that it was not indebted to Bowers for an additional amount.[3]

Bowers submitted copies of medical bills in excess of $92,000.00 along with a demand letter to Continental on April 26, 1982. On July 27, 1982, he filed a complaint in the State Court of DeKalb County, Georgia, against Continental seeking $42,419.10 in insurance benefits and, because of the lateness of the payment allegedly due from Continental, a statutory penalty of $10,604.79, reasonable attorney's fees and punitive damages. Continental removed the case to the United States District Court for the Northern District of Georgia on the grounds of diversity. The district court later denied Bowers' motion to remand the case back to the state court.

---

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The benefits included $5,000.00 for basic PIP coverage and $38,750.00 for optional PIP coverage.

2. See, e.g., Supp. Record, vol. 1, p. 12 (letter); Record at 266 (joint status report).

3. On April 26, 1982, Bowers' attorney sent a letter to Continental in which he stated that "my client has previously recovered personal injury protection benefits exhausting the $50,000 statutory amount of that policy from the insurance carrier insuring the motor vehicle which my client was operating at the time of the accident of August 24, 1981." Record at 29; see also Record at 171 (Continental's Response to Order of March 28, 1983) ("plaintiff received $50,000 in personal injury protection no fault benefits under the Aetna policy"). Bowers does not challenge Continental's original belief that Aetna paid him $50,000.00.

On May 2, 1983, Continental learned that Aetna had paid only $43,750.00 in PIP benefits to Bowers.[4] Upon receipt of this information, Continental conceded that it owed Bowers the sum of $6,250.00, the difference between $50,000.00, the greatest amount of coverage available under any one of the policies, and Aetna's payment.[5] On May 31, 1983, Continental tendered a check for $6,250.00, but conditioned its acceptance on Bowers' release of all further claims against Continental.[6] Eventually, after Bowers refused to accept the payment, Continental forwarded another check for the same amount on October 20, 1983, without the release provision.

The district court granted Continental's motion for summary judgment, and awarded Bowers $6,250.00, the amount Continental conceded it owed. In a later order the court granted Continental's motion to strike Bowers' request for attorney's fees, statutory penalties and punitive damages. This appeal followed.

Bowers first urges that the district court erred in denying his motion to remand the case back to the state court. According to Bowers, the suit was not removable because it falls under the direct action provision of 28 U.S.C. § 1332(c):

> [I]n any direct action against the insurer of a policy or contract of liability insurance ... to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

28 U.S.C. § 1332(c). Bowers argues that the district court lacked jurisdiction because, under the statute, his domicile must be imputed to Continental, thus destroying diversity.

■ At first glance, the literal language of the statute appears to support Bowers' contention. It is generally accepted that claims under no-fault insurance contracts may be considered "direct actions" within the meaning of section 1332(c). *See, e.g. Ford Motor Co. v. Insurance Co. of North America*, 669 F.2d 421, 425–26 (6th Cir. 1982); *McMurry v. Prudential Property and Casualty Insurance Co.*, 458 F.Supp. 209, 212–13 (E.D.Mich.1978). Moreover, it is undisputed that this suit is "against the insurer of a policy ... of liability insurance," and that Bowers, the insured, is "not joined as a party defendant."

■ Nonetheless, we do not believe that section 1332(c) applies to this action. The general rule has always been that the direct action proviso does not affect suits brought by an insured against his own insurer. *See, e.g. White v. United States Fidelity and Guaranty Co.*, 356 F.2d 746, 747–48 (1st Cir.1966). We are aware of no authority to the contrary.[7] The proviso was passed in response to statutes authorizing actions against the holder of a contract of indemnity for liability by a wrongdoer to the plaintiff. *See* S.Rep. No. 1308,

---

**4.** The true amount of Aetna's payment was contained in Bowers' answers to Continental's interrogatories. These answers were mailed on April 29, 1983, and filed in the district court May 2, 1983. *See* Record at 189–93.

**5.** *See* note 2, *supra.*

**6.** The tendered check contained a statement that the payment was for the "[r]elease of all claims on [Bowers' policy]." Supp. Record, vol. 1, p. 14. The check was accompanied by a release form and a draft order of dismissal. *Id.* at 15–16.

**7.** Although constituting direct actions, the cases cited as contrary authority did not involve an insured suing his own insurer. For example, *Ford Motor Co. v. Insurance Co. of North Ameri-*

*ca,* 669 F.2d 421 (6th Cir.1982), was a suit against a resident tortfeasor's nonresident insurer. Although the court held that Michigan's no-fault law acted as a "direct action" statute, the case was not one of an insured suing his own insurer. Similarly, in *McMurry v. Prudential Property and Casualty Ins. Co.,* 458 F.Supp. 209 (E.D.Mich.1978), an automobile passenger sued the owner-driver's no-fault insurer. In fact, the court explicitly stated that the proviso should apply, "at least ... where the named insured is not the plaintiff." *Id.* at 211. Finally, in *Tyson v. Connecticut General Life Ins. Co.,* 495 F.Supp. 240 (E.D.Mich.1980), the plaintiff sued the insurance company under contract to her employer to provide disability coverage.

88th Cong., 2d Sess. *reprinted in* [1964] U.S.Code Cong. & Ad.News 2778, 2778–79; *see also Spooner v. Paul Revere Life Insurance Co.,* 578 F.Supp. 369, 373 (E.D. Mich.1984) (The direct action proviso is triggered when "the act for which liability is sought to be imposed against the insurance company is the same act for which liability could be imposed against the insured."). In similar situations involving suits by an insured against his own insurer under an uninsured motorist policy, courts have held that section 1332(c) does not control. *See, e.g. Adams v. State Farm Mutual Automobile Insurance Co.,* 313 F.Supp. 1349 (N.D.Miss.1970); *Bishop v. Allstate Insurance Co.,* 313 F.Supp. 875 (W.D.Ark.1970). Accordingly, the district court did not err in denying Bowers' motion to remand.

■ Bowers next claims that he is entitled to recover PIP benefits in an amount greater than $50,000.00, the highest coverage on any one policy. In *Voyager Casualty Insurance Co. v. King,* 172 Ga.App. 269, 323 S.E.2d 4 (1984), *cert. denied,* No. 41655 (Ga., Nov. 6, 1984), the Georgia Court of Appeals resolved a previously unanswered question of state law by holding that optional PIP benefits could not be "stacked" to permit recovery in an amount greater than the highest coverage under any one policy. As a result of this recent pronouncement by the state appellate court, Bowers is not entitled to additional benefits.[8]

Finally, Bowers asserts a claim for statutory penalties, attorney's fees and punitive damages. Georgia law provides that insurance benefits must be paid within thirty days after the insurer receives reasonable proof of the fact and amount of the loss obtained or the insurer shall be liable for a penalty not exceeding twenty-five percent of the amount due plus reasonable attorney's fees. In addition, if the delay exceeds sixty days the insurer is subject to punitive damages. In either case, the insurer may avoid liability by proving that the failure to pay was in good faith. O.C. G.A. § 33–34–6.[9] Bowers contends that Continental is liable for these statutory penalties, attorney's fees and punitive damages because it failed to pay him the $6,250.00 it admitted it owed within the requisite time period.[10]

■ In interpreting this statute, a part of Georgia's no-fault automobile insurance act, Georgia courts have drawn on cases construing O.C.G.A. § 33–4–6, a similar law applying generally to bad faith refusals to pay by insurers. *See, e.g., Bituminous Casualty Corp. v. Mowery,* 145 Ga. App. 45, 244 S.E.2d 573 (1978). Georgia courts read this latter statute as requiring,

---

8. Basic PIP coverage may not be "stacked" under Georgia law. *See, e.g., Georgia Casualty & Surety Co. v. Waters,* 146 Ga.App. 149, 246 S.E.2d 202 (1978). Here, Bowers contends that the *optional* PIP coverages may be "stacked." Under *Voyager,* however, he may recover optional benefits only up to the highest amount of optional PIP coverage afforded in any one policy, or $45,000.00. Since Aetna paid to Bowers only $38,750.00 in optional coverage, Continental admits it owes the remaining $6,250.00. The $5,000.00 difference between these figures and those used for convenience in the opinion is the basic PIP coverage paid to Bowers.

9. Georgia law provides:
(b) Benefits required to be paid without regard to fault shall be payable monthly as loss accrues. The benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and the amount of loss sustained.... In the event the insurer fails to pay each benefit when due, the person entitled to the benefits may bring an action to recover them and the insurer must show that its failure or refusal to pay was in good faith, otherwise the insurer shall be liable for a penalty not exceeding .25 percent of the amount due and reasonable attorney's fees. (c) In addition to all other penalties provided for in this Code section, in the event an insurer fails or refuses to pay a person the benefits which the person is entitled to under this chapter within 60 days after proper proof of loss has been filed, the person may bring an action to recover the benefits; and, if the insurer fails to prove that its failure or refusal to pay the benefits was in good faith, the insurer shall be subject to punitive damages. O.C.G.A. § 33–34–6(b), (c).

10. Bowers' claim for statutory damages attributable to Continental's refusal to pay an amount greater than $6,250.00 is without merit given the holding of the Georgia Court of Appeals in *Voyager* establishing that he is not entitled to this additional amount.

as a condition to recovering bad faith damages, that the 30- or 60-day period lapse before the date suit is filed. *See, e.g., Life Insurance Co. v. Burke,* 219 Ga. 214, 222, 132 S.E.2d 737, 742 (1963); *Cotton States Mutual Insurance Co. v. Clark,* 114 Ga. App. 439, 446, 151 S.E.2d 780, 786 (1966). Because Bowers submitted his initial demand letter and adequate proof of loss on April 26, 1982, he may recover statutory damages only if Continental refused in bad faith to pay the $6,250.00 for thirty or sixty days after this date but before July 27, 1982, when he filed suit. A period of bad faith withholding after suit is filed is insufficient under Georgia law.[11]

■ Continental has met its burden of showing good faith in withholding payment of the $6,250.00 between April 26, 1982, and July 27, 1982. It is undisputed that during this time Continental reasonably believed that Aetna had paid Bowers $50,-000.00 rather than $43,750.00.[12] The district court did not err in granting Continental's motion to strike Bowers' request for statutory damages.

AFFIRMED.

NICHOLS, Senior Circuit Judge, concurring:

I join in the opinion, but would add the following:

The Supreme Court has in recent years made quite a point of always giving federal statutes their literal interpretation as written, absent special factors such as reaching an absurd result, associated with pretty plain indications that Congress intended something different and of lesser scope. Such well known cases have so held as *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 2298 n. 33, 57 L.Ed.2d 117 (1978) (the snail darter case); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). The instant case made me ·uneasy because it was not made plain at first why "direct action" did not mean any and every "direct action" in which the insurer was duly named as a defendant. This court says this would appear to be the result "at first glance." The reported cases seem to pass over rather lightly why this is not so on second and subsequent glances. I think perhaps they took it for granted and were not yet warned by the Supreme Court not to rewrite or vary statutory language whenever it seemed good to them to do so.

The answer here is that from the beginning of § 1332(c) "direct action" was on the order of a term of art, not of one in common speech. It meant the right, given then by but two states, for motor vehicle tort plaintiffs to skip suing the tort feasor and sue directly his insurance carrier. Such appears in the legislative history. Senate Rep. No. 1308, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.Code Cong. & Ad. News 2778. It calls such a statute a "direct action" statute, the words "direct action" in quotes at 2778. It refers to the two states as states which have "direct action" statutes. There is a detailed analysis of the spectacular effect of the Louisi-

11. An insured may salvage a premature suit for statutory damages by dismissing it and refiling, *see Piedmont Southern Life Ins. Co. v. Gunter,* 108 Ga.App. 236, 132 S.E.2d 527 (1963) (dismissal did not prejudice the defendant's opportunity to pay the claim without liability for attorney's fees); *Massachusetts Mutual Life Ins. Co. v. Montague,* 63 Ga.App. 137, 10 S.E.2d 279 (1940) (amendment not permitted), or perhaps by filing an amendment in accordance with the liberalized Georgia Civil Practice Act. *See generally Developments in Georgia Law—Insurance,* 13 Ga.L.Rev. 850, 947 (1979). In this case, Bowers did neither.

We also note that there are some differences in the statutory language of O.C.G.A. § 33–34–6, which is applicable here, and O.C.G.A. § 33–4–6, from which we draw controlling precedent.

For example, the former statute shifts the burden to the insurer to show good faith. None of these differences, however, lead us to conclude that Georgia courts would construe the former statute differently from the latter on the issues relevant to this case.

12. *See* note 3, *supra.* Although the question of good or bad faith is generally for the jury, it may properly be decided by the court when there is no evidence of a frivolous or unfounded refusal to pay. *See Georgia Farm Bureau Mutual Ins. Co. v. Pendley,* 155 Ga.App. 674, 677–78, 272 S.E.2d 540, 543 (1980). Here, Bowers does not dispute the reasonableness of Continental's original belief that Aetna paid him the full $50,-000.00.

ana "direct action" statute upon the case load of the federal district courts in that state. The report ends with letters by Warren Olney and Deputy Attorney General Katzenbach, describing the bill as doing no more than eliminating from diversity jurisdiction suits on certain tort claims in which both parties are local residents but which, because of a state "direct action" statute, may be brought directly against a foreign insurance carrier.

This is the kind of thing I think the Supreme Court would accept as justifying a departure from its rule of strict and literal statutory construction.

To buttress further my belief that "direct action" and "direct action statutes" are, semantically, terms of art that refer not to any statute authorizing suit against an insurance company, but only the special kind of which Louisiana and Wisconsin furnished the first examples, I refer to 12 Couch on Insurance 2d § 45:775 & ff (1964) where such statutes are described and right away in § 45:776 the writer starts calling them "direct action statutes." *See also id,* 1980 Supplement, § 45:777 telling one that a direct action statute is not to be used to get an insurer into federal court when both the plaintiff and the insured are residents of the same state.