**FORD MOTOR COMPANY,**
**Plaintiff-Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.**

**No. 80–1574.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 10, 1981.

Decided Feb. 1, 1982.

Rehearing Denied March 23, 1982.

John L. Hopkins, Jr., Ilene Gordon, Southfield, Mich., for plaintiff-appellant.

John A. Kruse, Michael F. Schmidt, Harvey, Kruse & Westen, P. C., Detroit, Mich., for defendant-appellee.

Before WEICK * and LIVELY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

LIVELY, Circuit Judge.

In this appeal we conclude that a federal court has no jurisdiction where a party claiming damages arising out of the use of a motor vehicle sues the insurer of the vehicle under the Michigan "no-fault" statute and a policy issued thereunder, where the plaintiff and the insured owner of the vehicle, though not a party, are citizens of the same state.

## I.

The plaintiff Ford Motor Company (Ford) suffered property damage when an explosion occurred on its premises at Flatrock, Michigan. It determined that the explosion was caused by the accidental mixture of a "core binder catalyst" and a resin. The catalyst was delivered to the Ford plant in a tank truck owned and operated by Refiners Transport and Terminal Corporation (Refiners). Due to the mistake of a Ford employee the catalyst was pumped from the truck into a resin storage tank, and the explosion occurred a short time later.

Claiming damage to its property in excess of $1,000,000 Ford brought this action in the district court, naming Refiner's insurer, Insurance Company of North America (INA), as the only defendant. Recovery from INA was sought under the Michigan "no-fault" insurance act, Michigan Compiled Laws Annotated (MCLA) § 500.3101 *et seq.* and a

provision of a policy which INA had issued to Refiners. Michigan adopted a new statute entitled "Personal and Property Protection and Residual Liability Insurance," MCLA Chapter 31, in 1972. For purposes of this appeal the operative provisions are contained in MCLA §§ 500.3121 and 500.-3135. Section 500.3121 is reproduced in full:

**500.3121 Property protection benefits, existence, no fault; definitions, property damage, accidental damage; measure of benefits; maximum benefits**

Sec. 3121. (1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125 and 3127.[1]

(2) Property protection insurance benefits are due under the conditions stated in this chapter without regard to fault.

(3) Damage to tangible property consists of physical injury to or destruction of the property and loss of use of the property so injured or destroyed.

(4) Damage to tangible property is accidental, as to a person claiming property protection insurance benefits, unless it is suffered or caused intentionally by the claimant. Even though a person knows that damage to tangible property is substantially certain to be caused by his act or omission, he does not cause or suffer such damage intentionally if he acts or refrains from acting for the purpose of averting injury to any person, including himself, or for the purpose of averting damage to tangible property.

(5) Property protection insurance benefits consist of the lesser of reasonable repair costs or replacement costs less depreciation and, where applicable, the value of loss of use. However, property protection insurance benefits paid under 1 policy for damage to all tangible prop-

---

* Circuit Judge Weick retired from regular active service under the provisions of 28 U.S.C. § 371(b) on December 31, 1981, and became a Senior Circuit Judge.

erty arising from 1 accident shall not exceed $1,000,000.00.

P.A.1956, No. 218, § 3121, added by P.A. 1972, No. 294, § 1, Eff. Oct. 1, 1973.

[1] Sections 500.3123, 500.3125, 500.3127.

The pertinent language from § 500.3135 is—

(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 was in effect is abolished except as to: ....

(Exceptions not relevant) (Footnote omitted).

The policy provision relied upon by Ford stated:

The Company [INA] will pay, in accordance with Chapter 31 of the Michigan Insurance Code, for damage to tangible property caused by accident and arising out of the ownership, operation, maintenance or use, including loading or unloading, of the insured motor vehicle.

Ford alleged in its complaint that its loss arose out of the "ownership, operation, maintenance or use, including loading and unloading of the insured motor vehicle" of Refiners.

In its answer INA denied that Ford's loss arose out of the ownership or use of the insured tank truck and alleged that Chapter 31 was unconstitutional if it could be held to provide benefits to Ford under the facts of this case. INA also denied that the district court had subject matter jurisdiction.

In its complaint Ford had asserted jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332. Ford is a Delaware corporation with its principal place of business in Michigan. The defendant INA is a Pennsylvania corporation, authorized to engage in the automobile insurance business in Michigan, with its principal place of business in Pennsylvania. However, Refiners, the insured owner of the tank truck, is a Delaware corporation with its principal place of business in Ohio. Under a 1964 amendment to 28 U.S.C. § 1332(c) a proviso was added:

*Provided, further,* That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

If this proviso were held to apply, there would be no diversity since both Ford and INA would be treated as corporate citizens of Delaware.

The district judge to whom the case was originally assigned upheld jurisdiction upon concluding that this was not a "direct action against the insurer" within the meaning of § 1332(c). The same judge later dismissed the action after taking notice of a holding by the Michigan Court of Appeals that the property protection provisions of Chapter 31 were unconstitutional. See *Shavers v. Attorney General,* 65 Mich.App. 355, 237 N.W.2d 325 (1975). After the Michigan Supreme Court reversed and held the no-fault provisions constitutional, see *Shavers v. Attorney General,* 402 Mich. 554, 267 N.W.2d 72 (1978), the parties stipulated that the previous judgment should be vacated and the case should proceed. The original judge having died, the judge to whom the case was reassigned determined that neither the statutory language nor that of the policy provided for recovery by Ford from INA. Ford appealed that decision, but the jurisdiction question was not pursued further by the parties.

## II.

This court raised the jurisdiction issue *sua sponte* at oral argument. The matter had been briefed in the district court, but both parties urged this court to uphold jurisdiction. Nevertheless it is our obligation to make certain that subject matter jurisdiction existed in the district court before undertaking a review of that court's decision on the merits.

## A.

The immediate purpose of the 1964 amendment to § 1332(c) was made clear in the legislative history. Louisiana and Wisconsin had enacted laws permitting one claiming injury at the hands of another who was covered by liability insurance to sue the liability insurance carrier rather than the alleged wrongdoer. Thus even where the plaintiff and the alleged tortfeasor were residents of the same state, if the liability insurer was a citizen of a different state, diversity jurisdiction could be asserted in such a direct action. The Louisiana act particularly resulted in a flood of essentially local lawsuits clogging already crowded district court dockets. By cloaking the nonresident insurer with the citizenship of its insured, Congress removed the basis of diversity jurisdiction. See S.Rep.No.1308, *reprinted in* [1964] U.S.Code Cong. & Admin. News 2778–80; *Henderson v. Selective Ins. Co.*, 369 F.2d 143, 149 (6th Cir. 1966); *White v. United States Fidelity & Guaranty Co.*, 356 F.2d 746, 747–48 (1st Cir. 1966). Most courts which dealt with the 1964 amendment in the years immediately following its enactment tended to limit its application narrowly. *E.g., Henderson, supra; White, supra; Inman v. MFA Mutual Ins. Co.*, 264 F.Supp. 727 (E.D.Ark.1967); *Walker v. Firemans Fund Ins. Co.*, 260 F.Supp. 95 (D.Mont.1966); *Carvin v. Standard Accident Ins. Co.*, 253 F.Supp. 232 (E.D.Tenn. 1966), *aff'd* on merits without discussion of jurisdiction, 395 F.2d 326 (6th Cir. 1968); *Twin City Fire Ins. Co. v. Wilkerson*, 247 F.Supp. 766 (E.D.Tenn.1965). The opinions in most of these cases stressed the specific purpose of the 1964 amendment and then concluded either that the insurance involved was not "liability insurance" or that the action was not a "direct action" within the meaning of § 1332(c). However, a district court in this circuit gave the proviso a more liberal reading in two early cases where it held that § 1332(c) applied to eliminate diversity where a worker's compensation claimant sued the compensation carrier rather than an employer who shared the plaintiff's citizenship. *Lane v. Insurance Co. of North America*, 268 F.Supp. 345 (E.D.Tenn.1967, per Taylor, J.); *Vines v. United States Fidelity & Guaranty Co.*, 267 F.Supp. 436 (E.D.Tenn.1967, per Wilson, J.).

## B.

More recent opinions of this court and other courts of appeals have also applied the proviso of § 1332(c) more broadly than the earlier decisions did. In *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721 (5th Cir.), *cert. denied*, 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974), the court specifically adopted the reasoning and some of the language of Judge Wilson in *Vines, supra*, and concluded there was no diversity in an action by a worker's compensation claimant. The inclusive language of § 1332(c) which embraces *all* direct actions against insurers was stressed. *Id.* at 723 (emphasis in original). In *O. M. Greene Livestock Co. v. Azalea Meats, Inc.*, 516 F.2d 509 (5th Cir. 1975) (per curiam), the court reasoned that it was necessary to give § 1332(c) a broad interpretation. This court adopted an expansive reading of the proviso in *Aetna Casualty & Surety Ins. Co. v. Greene*, 606 F.2d 123 (6th Cir. 1979), where Judge Wilson's rationale and language in *Vines, supra*, were approved. Though the *Aetna* court held that the language of § 1332(c) precluded its application in an action *by*, as opposed to one *against*, an insurer, it made clear that application of the proviso is not limited to traditional tort actions: "Congress, when it used the terms 'direct action' and 'liability insurance' in the amendment to § 1332(c), did not intend the amendment to apply only to traditional tort claims." 606 F.2d at 126.

*Aetna* was followed by the Fifth Circuit in *Dairyland Ins. Co. v. Makover*, 654 F.2d 1120 (5th Cir. 1981), which reaffirmed that court's broad construction of § 1332(c) by applying it to an omnibus insured as well as a named insured, though the court agreed that the action must be against the insurer for the proviso to apply. In holding that the citizenship of the omnibus insured as well as that of the named insured is attributed to the insurer under the 1964 amendment, the court in *Torres v. Hartford Ins.*

*Co.*, 588 F.2d 848 (1st Cir. 1978), noted that the purpose of the amendment was to restrict diversity jurisdiction and remarked on the continuing general trend among courts to achieve that result.

### C.

There have been four published decisions from the Eastern District of Michigan construing the § 1332(c) proviso in no-fault actions. In *McMurry v. Prudential Property & Casualty Ins. Co.*, 458 F.Supp. 209 (E.D.Mich.1978, per Kennedy, J.), the court dismissed an action brought under the Michigan no-fault act by a taxicab passenger against the insurer of the taxi driver. No-fault has been substituted for tort liability in Michigan and the act itself provides that good faith payment by an insurer discharges the insured's "liability." MCLA 500.3112. Under any liberal reading of § 1332(c) no-fault insurance should be equated with liability insurance, the district court held. The court also concluded that the Michigan Act provides "a species of direct action." 458 F.Supp. at 212. Finding that the literal requirements of § 1332(c) were met in actions under Michigan's no-fault act, the court concluded that "it is the sort of legislation Congress intended to cover in the proviso." *Id.* at 212–13. In *Tyson v. Connecticut General Life Ins. Co.*, 495 F.Supp. 240 (E.D.Mich. 1980, per Joiner, J.), the district court acknowledged the original purpose of the 1964 amendment to § 1332(c) but concluded it should be applied to cases other than those to which it was particularly addressed. The *Tyson* court found that "direct action" includes an action in contract as well as in tort. *Id.* at 243. Two other decisions by another judge of the same court, however, have held that § 1332(c) does not apply to actions under Michigan no-fault because they are not "direct tort action[s]" against a liability insurance carrier. *Watkins v. Allstate Ins. Co.*, 503 F.Supp. 848, 850 (E.D. Mich.1980); *Thornton v. Allstate Ins. Co.*, 492 F.Supp. 645, 648 (E.D.Mich.1980).

### III.

We conclude that the decisions in *McMurry* and *Tyson* contain the correct view of the applicability of the 1964 amendment to actions under the Michigan no-fault act. The impetus for the amendment was the situation which resulted when Louisiana and Wisconsin departed from the traditional practice of treating the insured rather than the insurer as the real party in interest in automobile negligence cases. However, if its language encompasses other situations, we should not limit application of the amendment to the specific conditions which gave it birth. The language of the amendment is inclusive rather than exclusive: "in *any* direct action against the insurer of a policy or contract of liability insurance ... to which the insured is not joined as a party-defendant ...." (Emphasis added). As has been noted earlier, MCLA § 500.3135(2) abolished tort liability arising from the ownership, maintenance or use of a motor vehicle in Michigan. As a substitute for such tort liability Michigan provided "personal protection benefits" and "property protection benefits" for those injured or suffering property damage arising out of the ownership, maintenance or use of such vehicles. These benefits are provided on a no-fault basis rather than on the basis of traditional tort liability, and actions to secure the benefits may be maintained directly against the insurer of the vehicle rather than the insured. The literal requirements for application of the proviso are met.

No-fault insurance had not been adopted in any jurisdiction when Congress enacted the 1964 amendment to § 1332(c). However, in one respect no-fault insurance operates in exactly the same way as the Louisiana and Wisconsin direct action statutes—it permits a person claiming injury or damage arising from the ownership or use of a motor vehicle to sue the insurer rather than the owner or operator of the vehicle. Unless the proviso is held to apply, the same "back door diversity" which Congress eliminated by the 1964 amendment would be possible under no-fault. No-fault represents a latter-day attempt by the states to

improve the mechanism for recovery by those injured and damaged in accidents arising out of the use of motor vehicles. Given Congress' reaction to earlier state legislation which permitted direct actions, no-fault should not be held to expand the jurisdiction of federal courts. Where, by making the insurer the defendant a plaintiff creates an apparent diversity which would not exist if the owner or operator of an insured vehicle were a named defendant, § 1332(c) operates to deny jurisdiction by attributing the citizenship of the insured to the insurer. When this attribution is made in the present case there is no diversity. INA is treated as a citizen of Delaware, the state of incorporation of its insured, Refiners. Since Ford is also a Delaware corporation and the only basis of federal jurisdiction is diversity, the district court lacked subject matter jurisdiction.

The judgment of the district court is vacated. The cause is remanded with directions that the action be dismissed for lack of subject matter jurisdiction. Each party will pay its costs on appeal.