Thomas M. **COMELLA**,
et al., **Plaintiffs**,

v.

**ST. PAUL MERCURY INSURANCE COMPANY, et al., Defendants.**

**No. 1:00cv2664.**

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 11, 2001.

Claudia R. Eklund, Lowe Eklund & Wakefield, Cleveland, OH, James A. Lowe, Lowe Eklund & Wakefield, Cleveland, OH, for plaintiffs.

Catherine A. Davis, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, Vincent A. Feudo, Nicola, Gudbranson & Cooper, Cleveland, OH, Richard Hodyl, Jr., Chicago, IL, Gary L. Nicholson, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, John D. Sayre, Nicola, Gudbranson & Cooper, Cleveland, OH, Hilary S. Taylor, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, Gary A. Vick, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for defendants.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiffs Thomas and Patricia Comella originally filed this action in state court. The case was then removed to this Court, based on diversity of citizenship. The Comellas now move to remand this action (docket no. 76). For the reasons stated below, the motion is **GRANTED,** and this case is **REMANDED** to the Cuyahoga County, Ohio Court of Common Pleas, where it was originally filed.

### I.

In their original complaint, the Comellas, who are Ohio residents, sued two defendants: (1) St. Paul Mercury Insurance Company ("St. Paul"), and (2) Guaranty National Insurance Company ("Guaranty National"). St. Paul is a citi-

zen of Minnesota, while Guaranty National is a citizen of Colorado. The defendants removed the action to this Court based on diversity jurisdiction. Subsequently, the Comellas amended the complaint to add two additional defendants: (3) the City of Highland Hts., Ohio ("Highland"); and (4) the Northern Ohio Risk Management Agency Self–Insurance Pool, Inc. ("NORMA"). Although both of these new defendants are Ohio residents, the Court retained jurisdiction because diversity of citizenship is determined at the time the action is originally filed and removed. *See Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 908 (6th Cir. 1993) ("Under section 1441(b), diversity of citizenship must exist as to a party both at the time the state action is commenced and at the time the defendant files the petition for removal"); *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir.1999) (examining diversity jurisdiction in a case where the defendant "filed its notice of removal ... one day after [the plaintiff] had filed its amended complaint naming a [new,] non-diverse defendant").

In their complaint, the Comellas allege that, on June 25, 1999, Thomas was operating a vehicle in the scope of his employment as an employee and elected official of Highland. Betty Doran rear-ended Thomas, causing him catastrophic spinal cord injuries, leaving him a quadriplegic. Doran had an automobile insurance policy, issued by GEICO, that provided liability coverage in the amount of $50,000; as such, Doran was underinsured. Meanwhile, St. Paul had issued a $1 million liability insurance policy to Highland and NORMA (of which Highland was a member), and Guaranty had issued a $9 million umbrella liability insurance policy to Highland and NORMA. The Comellas made claims for underinsured motorists coverage under both policies, but the claims were denied. Accordingly, the Comellas

state claims for: (1) breach of contract; and (2) a judgment declaring they are "insureds" under the St. Paul and Guaranty insurance policies, and that they are due benefits pursuant to underinsured motorists coverage. Guaranty and St. Paul filed mirror-image counterclaims, asking the Court for a judgment declaring they ·do not owe any coverage to the Comellas under the insurance policies.

The Comellas' claims against the insurance companies rest on two Ohio Supreme Court cases: *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), and *Linko v. Indemnity Ins. Co. of N. Am.*, 90 Ohio St.3d 445, 739 N.E.2d 338 (2000). Both of these cases examine and interpret Ohio Rev. Code § 3937.18, the insurance statute that sets out uninsured/underinsured ("UM/UIM") coverage requirements in Ohio. Put in extremely simple terms, *Scott–Pontzer* and *Linko* stand for the propositions that, unless an insured business and its insurer agree otherwise, and unless their agreement meets very specific requirements: (1) UM/UIM automobile coverage automatically exists in favor of the insured business, by operation of law; and (2) the business insured's employees also automatically receive this UM/UIM automobile coverage. *See* Order at 7–26 (July 24, 2001) (analyzing *Scott–Pontzer* and *Linko* in detail). The Comellas claim that, pursuant to *Scott–Pontzer* and *Linko*, they are "insureds" under both the St. Paul and Guaranty liability insurance policies, and are eligible to receive UM/UIM coverage.

Although this action was removed to this Court over a year ago, the Comellas now move for remand. This motion is premised on a recent decision by Judge Daniel A. Polster, who concluded that, in *Scott–Pontzer* cases, the insurance company must be deemed a citizen of the state of

which the insured is a citizen. *Kormanik v. St. Paul Fire and Marine Ins. Co.,* slip op. at 2–6, case no. 5:01–CV–2122 (Oct. 19, 2001) (examining 28 U.S.C. § 1332(c)(1)). If the reasoning of *Kormanik* is applied to this case, St. Paul and Guaranty (the insurance companies) would be deemed a citizen of the same state as Highland and NORMA (the insureds), which is Ohio. This would defeat diversity because, even at the time the action was originally filed, the Comellas and the two original defendants (St. Paul and Guaranty) would be deemed citizens of the same state (Ohio).

The defendants oppose the Comellas' motion to remand, arguing that *Kormanik* was wrongly decided. The Court examines this jurisdictional question below.

## II.

As an initial matter, the Court notes that the passage of over a year's time since this case was removed to this Court does not preclude remand. "Unlike other issues not involving the merits of a case, subject-matter jurisdiction may be raised at any time, by any party or even sua sponte by the court itself." *Franzel v. Kerr Mfg. Co.,* 959 F.2d 628, 630 (6th Cir.1992); *see* Fed.R.Civ.P. 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"). While a motion to remand "on the basis of any defect in *removal procedure* must be made within 30 days after the filing of the notice of removal," a remand on the basis of lack of subject matter jurisdiction is required if the jurisdictional failure appears "any time before final judgment." 28 U.S.C. § 1447(c) (emphasis added). Indeed, the issue of whether diversity jurisdiction exists may be raised sua sponte by a court of appeals, after a trial court has already entered judgment. *See Ford Motor Co. v. Insurance Co. of N. Am.,* 669 F.2d 421,

423 (6th Cir.1982) ("[t]his court raised the jurisdiction issue sua sponte at oral argument"). In this case, the possible jurisdictional failure came to light after the Comellas learned of Judge Polster's opinion in *Kormanik.*

In *Kormanik,* the Court analyzed 28 U.S.C. § 1332(c)(1), which addresses this Court's diversity jurisdiction in certain cases involving insurance companies. Specifically, the statute states:

> In any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as any state by which the insurer has been incorporated and of the State where it has its principle place of business.

This statute is most often cited in cases where "a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him." *Rosa v. Allstate Ins. Co.,* 981 F.2d 669 (2nd Cir.1992). If state law "permit[s] one claiming injury at the hands of another who was covered by liability insurance to sue the liability insurer rather than the alleged wrongdoer," § 1332(c)(1) adds the requirement of diversity of jurisdiction between the tortfeasor and the injured plaintiff—even though the tortfeasor is not a party. *Ford Motor Co. v. Insurance Co. of N. Am.,* 669 F.2d 421, 424 (6th Cir.1982). "By cloaking the nonresident insurer with the citizenship of its insured, Congress removed the basis of diversity jurisdiction." *Id.* In *Kormanik,* Judge Polster concluded that § 1332(c)(1) applies to *Scott–Pontzer* cases, so that, when an employee sues his employer's insurance

company for UM/UIM coverage, the defendant insurance company must be deemed a resident of the same state as the employer-insured.[1]

In response to the Comellas' motion to remand, the defendants respectfully assert that *Kormanik* was wrongly decided. The defendants insist § 1332(c)(1) does not operate to preclude diversity jurisdiction in this case because: (1) this is not a "direct action;" and (2) the UM/UIM coverage provided by St. Paul and Guaranty National is not "a policy or contract of liability insurance." With regard to the first assertion, the defendants argue that a "direct action" is "limited to cases where a party sues an insurer, on the basis of an insured's liability, without joining and first obtaining a judgment against the insured .... [§ 1332(c)] refers to cases where the insured [could be but] is not a defendant— it was not intended to cover a case where the insured is a plaintiff." Response brief at 3 (quoting *McGlinchey v. Hartford Accident and Indem. Co.*, 666 F.Supp. 70, 71 (E.D.Pa.1987) (citation omitted)); *see Kelly v. State Farm Mut. Auto. Ins. Co.*, 764 F.Supp. 1337, 1339 (S.D.Iowa 1991) ("unless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action") (citation omitted). Defendants argue that, because the Comellas, as plaintiffs, seek "insured" status, § 1332(c)(1) does not apply.

With regard to the second assertion, the defendants argue that UM/UIM coverage "does not cover the insured for liability he or she may incur to another party as liability insurance does." Response brief at 5. Rather, UM/UIM coverage is "first party coverage affording recompense for one's own losses, as health insurance does." *Id.*

Defendants argue that, because the Comellas seek UM/UIM coverage, this case does not involve a policy or contract of *liability* insurance, so § 1332(c)(1) does not apply.

The Court concludes that the cases cited by the defendants are not apposite and the defendants' arguments do not prevail. With regard to defendants' assertion that a "direct action" is limited to instances where an injured party sues an insurer without joining the tortfeasor-insured, the Sixth Circuit Court of Appeals has rejected such an interpretation. Immediately after Congress enacted the diversity-limiting provision contained in § 1332(c)(1), most courts "tended to limit its application narrowly." *Id.* Subsequently, however, the Sixth Circuit Court of Appeals concluded that, "if [the statute's] language encompasses other situations, we should not limit application of the [diversity-limiting provision] to the specific conditions which gave it birth." *Id.* at 425. The Sixth Circuit, examining the statute's language, held that "Congress, when it used the terms 'direct action' and 'liability insurance' in ... § 1332(c), did not intend the [language] to apply only to traditional tort claims." *Id.* at 424 (quoting *Aetna Cas. & Surety Ins. Co. v. Greene*, 606 F.2d 123, 126 (6th Cir.1979)). The defendants cannot avoid the force of § 1332(c)(1) merely because the Comellas do not bring the type of claim that the statute "traditionally" excludes from this Court's jurisdiction.

In a later case, the Sixth Circuit stated that "the term 'direct action,' as used in the [statute], means an action that under applicable state law may be brought directly against the insurer by the tort claimant prior to entry of any judgment against the alleged tortfeasor." *Stockton v. General Acc. Ins. Co.*, 1990 WL 20477 at

---

1. Chief Judge Paul R. Matia adopted the reasoning of *Kormanik* in *Kohus v. Hartford Ins. Co.*, slip op., case no. 01–CV–1179 (Nov. 19, 2001), and remanded a *Scott–Pontzer* case for lack of diversity jurisdiction.

*3 (6th Cir. Mar 6, 1990). In this case, the applicable state law, as set out by the Ohio Supreme Court in *Scott–Pontzer* and *Linko,* allows the plaintiffs (the Comellas) to bring an action against the defendant insurance companies (St. Paul and Guaranty National) prior to the entry of any judgment against the tortfeasor (Betty Doran, who rear-ended Thomas).[2] Thus, this case meets the Sixth Circuit's definition of a "direct action" under § 1332(c)(1).

With regard to the defendants' assertion that, because the Comellas seek UM/UIM coverage and not "liability coverage," the statute does not apply, all of the cases cited by the defendants are factually distinct. In every case cited by defendants, a plaintiff sued his *own insurer* for an alleged failure to provide UM/UIM coverage, *pursuant to a contract between them, signed by the plaintiff.*[3],[4] Here, the Comellas entered into no contract with the insurer defendants. Rather, they bring suit because state statute, as interpreted by the Ohio Supreme Court in *Scott–Pontzer* and *Linko,* "permits a person claiming injury or damage arising from the ownership or use of a motor vehicle to sue [his employer's] insurer rather than the owner or operator of the vehicle." *Ford,* 669 F.2d at 425. This statutory interpretation, like the no-fault statute examined in *Ford,* "represents a latter-day attempt by the state[ ] to improve the mechanism for recovery by those injured and damaged in accidents arising out of the use of motor vehicles." *Id.* at 425–26. In particular, the Ohio Supreme Court's statutory interpretation creates insurance coverage by operation of law, even though this "result . . . was not intended by the parties to the insurance contracts at issue." *Scott–Pontzer,* 710 N.E.2d at 1120–21. In both the instant case and in *Ford,* state law allows a plaintiff to sue directly an otherwise unobligated insurer to recover the tortfeasor's liability. And, as in *Ford,* "[u]nless the proviso is held to apply, the same 'back door diversity' which Congress eliminated by the 1964 amendment [to § 1332] would be possible" in *Scott–Pontzer* cases. *Ford,* 669 F.2d at 425.

To be sure, there is a distinction between this case and *Ford.* In *Ford,* the insured—whose state of residence the defendant insurer was deemed to adopt, pursuant to § 1332(c)—was the *tortfeasor.* In this case, the insured—whose state of residence the defendant insurers are deemed to adopt, pursuant to § 1332(c)—is not the tortfeasor, but the tort victim's own employer. But in both this case and in *Ford,* it is an artifact of state law that permits a plaintiff to: (a) name an insurance company as a defendant (b) without naming the tortfeasor as a party (c) to recover dam-

---

**2.** As Judge Polster noted, a *Scott–Pontzer* action does not require prior entry of a judgment against the tortfeasor because "an allegation that the tortfeasor has no insurance or has insufficient insurance to cover the Plaintiff's injuries will suffice." *Kormanik,* slip op. at 5 n. 1.

**3.** Actually, in some of the cases cited by the defendants, it was the UM/UIM insurer who sued its own insured. *See, e.g., State Farm Ins. Co. v. Evans,* 712 F.Supp. 57 (E.D.Pa. 1989) (insurer petitioned for appointment of arbitrator in dispute over uninsured motorist claims); *USAA Cas. Ins. Co. v. Suzanne,* 1988 U.S. Dist LEXIS 17883 (E.D.Mich. Aug. 2, 1988) (action brought by insurer against its insured for review of an arbitration award of uninsured motorist benefits). In every case, however, the parties were the insured (or his estate) and his insurer pursuant to a contract between them—unlike this case, where the Comellas are not a party to any contract with the insurer defendants.

**4.** It is notable that several of the cases cited by the defendants were also cited by the Sixth Circuit Court of Appeals, in *Ford,* as examples of early cases limiting the application of § 1332(c)—a view the *Ford* court then distinguished and rejected. *Ford,* 669 F.2d at 424 (adopting instead the analysis contained in "more recent opinions").

ages caused by the absent tortfeasor. Thus, in *Ford,* the Michigan no-fault statute allowed the plaintiff (Ford Motor) to sue an insurer (INA) to recover damages caused by the tortfeasor (Refiners), without joining the tortfeasor as a party. *Ford,* 669 F.2d at 422. In this case, Ohio law, by virtue of *Scott–Pontzer* and *Linko,* allows the plaintiff (Comella) to sue an insurer (St. Paul and Guaranty National) to recover damages caused by the tortfeasor (Betty Doran), without joining the tortfeasor as a party. Indeed, in both this case and *Ford,* state law makes insurance benefits available to an injured party "[other] than on the basis of traditional tort liability, and actions to secure the[se] benefits may be maintained directly against the insurer of the vehicle rather than the insured." *Id.* at 425. The factual circumstances of this case may be different from those of *Ford,* but the logic leading to the application of § 1332(c)(1) is the same.

As Judge Polster noted in *Kormanik,* the Ohio Supreme Court's rulings in *Scott–Pontzer* and *Linko* have "resulted in a burgeoning number of cases that would not otherwise have fallen within the diversity jurisdiction of the federal courts." Slip op. at 4. Thus, "the same policy reasons that prompted the addition of the diversity restricting provision to § 1332(c)

in the first place apply with equal force to *Scott–Pontzer* actions." *Id.* Defendants attack this aspect of *Kormanik* by asserting that policy considerations "are not an appropriate basis for remand." Brief in opp. at 6. It is certainly true that a "District Court's heavy docket" is "plainly irrelevant" to the question of whether it has jurisdiction. *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 344, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). But the question of jurisdiction, itself, is supremely relevant, and Congress enacted § 1332(c)(1) to ensure this Court's limited diversity jurisdiction would not be expanded artificially by a wrinkle in state law. It is this jurisdiction-guarding "policy" that the Court enforces here, protecting itself against "back door diversity," and the Court does not reach its conclusion merely because it "considers itself too busy to try" the case. *Id.*[5]

Because the Court concludes § 1332(c)(1) does apply to this case, defendants St. Paul and Guaranty must be deemed a citizen of the same state as their insureds, Highland and NORMA. This result defeats diversity because, even at the time the action was originally filed, the Comellas and the two original defendants (St. Paul and Guaranty) must be deemed citizens of Ohio.[6] As such, this Court does

---

**5.** The Court hopes the parties do not seriously believe that the Court chooses to remand this action simply because it considers itself too busy to pay attention to this case. The depth of this Court's analysis of the issues earlier raised by the parties speaks for itself. *See* Order at 7–26 (July 24, 2001) (analyzing the issues raised and certifying certain questions to the Ohio Supreme Court). Defendants also object to Judge Polster's conclusion in *Kormanik* to the extent it is based on his observation that "the unsettled nature of the law surrounding [*Scott–Pontzer*] actions frequently leaves district courts in the difficult position of attempting to guess how the Ohio Supreme Court would rule given a particular set of circumstances." Slip op. at 4. While the undersigned agrees completely that it

"makes far more sense for a state court to address these unsettled issues," *id.,* this Court's ruling (and, it believes, Judge Polster's ruling) is based solely on its interpretation of Congress's grant of jurisdiction. Nonetheless, it bears noting that the Ohio Supreme Court's refusal to accept this Court's certified questions only proves Judge Polster correct.

**6.** The facts of this case do not present the question of whether diversity jurisdiction would exist if the employer-insured was not a citizen of Ohio. That is, if Thomas Comella worked for a business domiciled in Delaware and sued his employer's insurer for UM/UIM coverage, the insurer would be deemed a De-

not have diversity jurisdiction over this case.

### III.

In sum, the Court concludes that there is not complete diversity of citizenship between all plaintiffs and all defendants in this case. Accordingly, "the case was removed improvidently and without jurisdiction." 28 U.S.C. § 1447(c). This action is hereby remanded to the Cuyahoga County, Ohio Court of Common Pleas, where it was originally filed.

**IT IS SO ORDERED.**

laware citizen and diversity might still exist. On the other hand, the Ohio Supreme Court ruled in *Scott–Pontzer* that a corporation's employees, even though they were not a "named insured," were still "insureds" entitled to UM/UIM coverage under a commercial automobile liability policy designating the corporation as the named insured. In other words, for purposes of his *Scott–Pontzer* UM/ UIM claim against his employer's insurer, Comella is an "insured;" thus, pursuant to 28 U.S.C. § 1332(c)(1), it appears that the insurer might *also* be deemed a resident of Ohio, Comella's state of residency. This circumstance, of course, would defeat diversity jurisdiction. The Court, however, does not reach this question in this case.