**Brandon E. FELLOWS, a Minor, etc., et al., Plaintiffs,**

v.

**GENESIS INSURANCE COMPANY, Defendant.**

**No. 4:01 CV 1929.**

United States District Court, N.D. Ohio, Eastern Division.

March 18, 2002.

Jeffrey W. Fodor, Warren, OH, for Plaintiffs.

Ian R. Smith, McCaslin, R. Gary Winters, Imbus & McCaslin, Cincinnati, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

Before the Court is plaintiff's motion to remand, with supporting documents. (Doc. Nos. 21–24). Defendant has filed a memorandum in opposition. (Doc. No. 28). No reply brief was filed. For the reasons set forth below, the motion is denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit originated with a complaint filed on July 3, 2001 in the Court of Common Pleas for Trumbull County, Ohio. Brandon Fellows, a minor ("Brandon"), and Michelle Fellows–Knox ("Fellows–Knox"), his mother, are seeking uninsured motorist coverage under a policy of insurance issued by the defendant to Giant Eagle, Inc., the employer of Fellows–Knox's husband, the stepfather of Brandon. The complaint alleges, in relevant part, that on July 4, 1999 Brandon was severely and permanently injured in an automobile accident which was caused by a non-party tortfeasor who was uninsured and that Fellows–Knox has incurred and will continue to incur substantial medical expenses on behalf of Brandon. Their claim is based primarily on two major decisions of the Supreme Court of Ohio: *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999) and *Linko v. Indemnity Ins. Co. of N. Am.*, 90 Ohio St.3d 445, 739 N.E.2d 338 (2000),

which, taken together, teach simply that, unless an insured business and its insurer agree otherwise: (1) uninsured/underinsured ("UM/UIM") motor vehicle coverage automatically exists by operation of law in favor of the insured business; and (2) the employees of the insured business also automatically receive this UM/UIM coverage.

On August 9, 2001, the defendant, a Connecticut corporation, removed the action to this Court on the basis of diversity jurisdiction. Plaintiffs now seek an order of remand on the strength of the recent decisions of other branches of this court. *See, Comella v. St. Paul Mercury Ins. Co.*, 177 F.Supp.2d 704 (N.D.Ohio 2001) (O'Malley, J.); *Kormanik v. St. Paul Fire and Marine Ins. Co.*, No. 5:01CV02122, 2001 WL 1850890 (N.D.Ohio Oct. 19, 2001) (Polster, J.).

## II. DISCUSSION

*Scott–Pontzer*–type complaints typically allege the following basic fact pattern: (1) the plaintiff (or the plaintiff's decedent or minor child) has been injured in a motor vehicle accident caused by a non-party tortfeasor who was either uninsured or underinsured; (2) the plaintiff is an "insured" under a policy of insurance provided by the defendant to an employer who is the named insured on the policy; (3) the

insurance policy provides (either undisputedly or arguably) UM/UIM coverage; and, (4) the insurance company has refused to pay a claim made under the policy by the plaintiff.

Because the insurance company and the injured person (i.e., the plaintiff) often have differing citizenship, *Scott–Pontzer* cases that are not directly filed in federal court under the diversity jurisdiction statute are typically removed from state court by the insurance company defendant. The Northern District of Ohio has seen many of these cases filed.[1]

On March 19, 2001, another branch of this court remanded a *Scott–Pontzer*–type case concluding that, under 28 U.S.C. § 1332(c)(1), the insurer is "deemed a citizen of the State of which the insured is a citizen[.]" *Kormanik v. St. Paul Fire & Marine Ins. Co.*, No. 5:01CV02122, 2001 WL 1850890 (N.D.Ohio Oct. 19, 2001). In *Kormanik*, since the employer/insured was an Ohio corporation, the defendant insurer's citizenship was deemed to be the same. The ruling in *Kormanik* was, of course, predicated on a finding by the court that the complaint was a "direct action against the insurer of a policy or contract of liability insurance[.]" 28 U.S.C. § 1332(c)(1). On December 11, 2001, the presiding judge in *Comella v. St.*

---

**1.** A quick review of the electronic docket of the Eastern Division this District easily surfaced the following cases (and there are probably more that did not so easily surface): *Dolly v. Old Republic Ins. Co.*, 200 F.Supp.2d 823 (N.D.Ohio 2002) (Dowd, J.); *Martin v. Liberty Mut. Ins. Co.* (Dowd, J.); *Estate of Monahan v. American States Ins. Co.*, No. 5:00CV1191 (Economus, J.) (termed and on appeal); *Comella v. St. Paul Mercury Ins. Co.*, 177 F.Supp.2d 690 (N.D. Ohio 2001) (O'Malley, J.) (termed and on appeal); *Lawler v. Fireman's Fund Ins. Co.*, 163 F.Supp.2d 841 (N.D.Ohio 2001) (Gwin, J.) (termed and on appeal); *Verhovec v. Wassau Ins. Cos.*, No. 5:01CV662 (Polster, J.) (termed); *Johnson v.*

*Fireman's Fund Ins. Co.*, NO. 1:01CV1063 (Nugent, J.); *Kohus v. Hartford Ins. Co.* (Matia, C.J.) (termed); *Redmon v. Sumitomo Marine Management (U.S.A.), Inc.*, 179 F.Supp.2d 787 (N.D. Ohio 2001) (Aldrich, J.); *Bliss v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:01 2046 (Wells, J.); *Kormanik v. St. Paul Fire & Marine Ins. Co.*, No. 5:01CV2122, 2001 WL 1850890 (N.D.Ohio 2001) (Polster, J.) (termed); *Gooden v. National Union Fire Ins. Co.*, No. 5:01CV2138 (Polster, J.); *Fleshman v. Michigan Mut. Ins. Co.*, No. 1:01CV2389 (Matia, C.J.); *Piros v. National Union Fire Ins. Co.*, No. 4:02CV271 (Dowd, J.).

*Paul Mercury Ins. Co.*, remanded that case in reliance on *Kormanik*.

In the instant motion, plaintiff relies upon *Kormanik* and *Comella* in seeking an order of remand to the state court. Defendant, predictably, argues that these cases were wrongly decided because *Scott–Pontzer*-type cases do not fall within the "direct action exception" of Section 1332(c)(1).

At present there is a split in the district on this issue. Some judges have followed the reasoning in *Comella* and *Kormanik*. *See, e.g., Stubbins v. Nationwide Agribusiness Ins. Co.*, No. 3:01CV7594, 2002 WL 100590 (N.D.Ohio Jan. 3, 2002) (Carr, J.); *Estate of Monahan v. American States Ins. Co.*, No. 5:00CV1191 (N.D.Ohio Dec. 20, 2001) (Economus, J.); *Verhovec v. Wausau Ins. Co.*, No. 5:01CV662 (N.D.Ohio Nov. 11, 2001) (Polster, J.); *Kohus v. Hartford Ins. Co.*, 2001 WL 1850889 (N.D.Ohio Nov. 19, 2001) (Matia, C.J.).

Other judges have decided differently. *See, e.g., Fidelity & Guaranty Ins. Underwriters, Inc. v. Nocero*, No. 1:01CV397, 2001 WL 1792448 (N.D.Ohio Dec. 13, 2001, Doc. No. 28) (Gaughan, J.); *Redmon v. Sumitomo Marine Management (U.S.A.), Inc.*, No. 1:01CV1871 (N.D.Ohio Oct. 30, 2001) (Aldrich, J.); *Johnson v. Fireman's Fund Ins. Co.*, No. 1:01CV1063 (N.D.Ohio Jan. 15, 2002) (Nugent, J.); *Bliss v. National Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:01CV2046 (N.D.Ohio Nov. 11, 2001) (Wells, J.).[2]

■ The undersigned is persuaded by the reasoning in the first group of cases and does not accept the argument that these *Scott–Pontzer*-type cases are not

"direct action[s] against the insurer of a policy or contract of liability insurance[.]" In particular, the Court accepts the reasoning of this group of cases with respect to what constitutes a "direct action." Beyond that this Court also finds that UM/ UIM coverage is, by nature, contractual and, therefore, falls within the confines of "a policy or *contract* of liability insurance." The Court views UM/UIM coverage, where it exists either by express terms or by operation of law (for failure to comply with strict statutory requirements), as an agreement, that is, a contract, between the insurer and the insured to *assume* the liability of someone else (i.e., the uninsured or underinsured motorist). Therefore the Court rejects the argument that UM/UIM coverage is not *liability* coverage.

■ As for the question of citizenship, the instant case can be distinguished from *all* of the cases cited above because in all of the above-cited cases, no matter how each judge determined the "direct action" issue, there truly was *not* complete diversity. Assuming for a moment that the Court is correct in agreeing that *Scott–Pontzer*-type cases are "direct action[s] against the insurer of a policy or contract of liability insurance," so that the insurer is deemed to have the same citizenship as its insured, in all of the cases cited above, the insured company was an *Ohio* company. Therefore, the insurers, though all citizens of other states, were *also* citizens of Ohio.

In the instant case, the insured company, Giant Eagle, Inc., is apparently a citizen of the State of Pennsylvania. Therefore, even if Genesis Insurance Company,

2. In *Martin v. Liberty Mutual Ins. Co.*, 187 F.Supp.2d 896 (N.D.Ohio 2001), the undersigned declined to dismiss under the reasoning of *Kormanik*, not so much because of any disagreement with that opinion, but because the defendant was trying to change its prior sworn representations regarding citizenship in a way that would bring the *Martin* case under the reasoning of *Kormanik*. This Court held that the *Martin* defendant would be held to its previous citizenship admissions.

a Connecticut corporation, is deemed to have the citizenship of its insured Giant Eagle, there would still be true diversity of citizenship.

There is another argument which, although not made by the defendant,[3] the Court feels compelled to address, namely, that Giant Eagle's employees and their family members, are also considered "insureds" under *Scott–Pontzer*. Under this argument, since Brandon and Fellows–Knox are "insureds" under the policy, *their* citizenship, as well as Giant Eagle's, must be imposed upon the insurer. This, of course, would defeat diversity. In *Comella*, Judge O'Malley suggested this possibility in a footnote:

> The facts of this case do not present the question of whether diversity jurisdiction would exist if the employer-insured was not a citizen of Ohio. That is, if Thomas Comella worked for a business domiciled in Delaware and sued his employer's insurer for UM/UIM coverage, the insurer would be deemed a Delaware citizen and diversity might still exist. On the other hand, the Ohio Supreme Court ruled in *Scott–Pontzer* that a corporation's employees, even though they were not a "named insured," were still "insureds" entitled to UM/UIM coverage under a commercial automobile liability policy designating the corporation as the named insured. In other words, for purposes of his *Scott–Pontzer* UM/UIM claim against his employer's insurer, Comella is an "insured;" thus, pursuant to 28 U.S.C. § 1332(c)(1), it appears that the insurer might *also* be deemed a resident of Ohio, Comella's state of residency. This circumstance, of course, would defeat di-

versity jurisdiction. The Court, however, does not reach this question in this case.

*Comella*, 177 F.Supp.2d at 709–10 n. 6 (emphasis in original).

The undersigned does not believe that the reasoning of *Scott–Pontzer* in determining who is an "insured" for purposes of UM/UIM coverage should extend any farther than its own narrow terms. Although the Court has no problem with the holding that a person who is not a *named* insured might still be "insured" within the meaning of a given policy, it would stretch the *Scott–Pontzer* holding entirely too thin to apply it to determinations of citizenship for purposes of a diversity analysis. The Court can easily accept that, where the insurer rather than the named insured is sued, creating an artificial diversity of citizenship, the insurer should take on the citizenship of the named insured. Beyond that, this Court would not go.

### III. CONCLUSION

For the reasons set forth above, plaintiffs' motion to remand (Doc. No. 21) is denied.

There remains pending a motion for summary judgment filed by the defendant (Doc. No. 17). Now that the motion to remand is resolved, the response and reply briefs relating to the summary judgment motion shall be filed according to the deadlines set forth in the Order of February 8, 2002 (Doc. No. 27).[4]

IT IS SO ORDERED.

---

3. The plaintiffs raised the issue in their motion, anticipating that the defendant might make the argument.

4. In that Order, the Court granted plaintiffs' motion for an extension of time to respond to the summary judgment motion and directed that, if the motion to remand were denied,

plaintiffs would have ten business days from the date of the denial order within which to file their response to the summary judgment motion and defendant would have seven calendar days after that to file a reply, if any.