**Burton ELOM, Plaintiff**

v.

**FIDELITY & GUARANTY INSURANCE COMPANY,** Defendant

No. 1:01CV1790.

United States District Court, N.D. Ohio, Eastern Division.

June 19, 2002.

---

J. Gary Seewald, Esq., Thomas Mester, Esq., Nurenberg, Plevin, Heller & McCarthy, Cleveland, for Plaintiff.

Alton L. Stephens,Jr., Esq., David P. Bradley, Esq., Deborah W. Yue, Esq., Larry C. Greathouse, Esq., Gallagher, Sharp, Fulton & Norman, Cleveland, for Defendants.

## MEMORANDUM OF OPINION AND ORDER REGARDING JURISDICTION

WELLS, District Judge.

Plaintiff, Burton Elom ("Elom"), originally filed this action in the Ohio Court of Common Pleas for Cuyahoga County. Defendant, Fidelity & Guaranty Insurance Company ("Fidelity"), removed the case to federal district court claiming federal diversity jurisdiction. On 13 December 2001, this Court ordered Fidelity to show cause why this case should not be remanded to state court for lack of subject matter jurisdiction. (Docket No. 15). Fidelity filed responsive briefs arguing diversity of citizenship existed. (Docket Nos. 16, 18, 22). Elom filed a brief in opposition arguing 28 U.S.C. § 1332(c)(1) destroys diversity in this case. (Docket No. 21).

For the reasons that follow, the Court is persuaded that diversity jurisdiction is not present in this case.

## I. BACKGROUND

Elom alleges that on or about 15 March 1997, a negligent driver struck him while he was walking across the street, causing him severe and permanent injuries. According to Elom, the driver was underinsured; although Elom received the full limit of the driver's policy, it was insufficient to compensate his injuries.

The complaint further alleges that at the time of the accident, Elom, an Ohio resident, worked at Braden Sutphin Inc. ("Braden"), an Ohio corporation with its principal place of business in Ohio. Braden allegedly maintained automobile and umbrella/excess insurance policies with Fidelity. Elom alleges these policies were in effect at the time of the accident, that he was an insured under the policies, and that the policies provide uninsured and underinsured motorist ("UM/UIM") coverage.

Elom seeks UM/UIM coverage from Fidelity, an Iowa corporation with its principal place of business in Minnesota, based on *Scott–Pontzer v. Liberty Mutual Fire Ins. Co.*, 710 N.E.2d 1116, 85 Ohio St.3d 660 (1999).

## II. LEGAL ANALYSIS

*Scott–Pontzer v. Liberty Mutual Fire Ins. Co.*, 710 N.E.2d 1116, 85 Ohio St.3d 660 (1999) and *Linko v. Indemnity Ins. Co. of North America*, 90 Ohio St.3d 445, 739 N.E.2d 338 (2000) provide that unless an insured business and its insurer agree otherwise: 1) UM/UIM coverage exists by operation of law in favor of the insured business; and 2) the employees of the insured business automatically receive this coverage. *Fellows–Knox v. Genesis Ins. Co.*, 201 F.Supp.2d 795 (N.D.Ohio 2002). Essentially, *Scott–Pontzer* creates a new

Ohio cause of action allowing an employee to sue his or her employer's insurance provider as a beneficiary of UM/UIM insurance for an automobile accident caused by a third party. *Scott–Pontzer* claims generally follow the same fact pattern: allegedly, plaintiff is injured by a third party tortfeasor, plaintiff is insured under the policy of his or her employer, the policy provides UM/UIM coverage, and the insurance company refuses to pay plaintiff's claim. *Fellows–Knox*, at 797.

The jurisdictional question before the Court is whether 28 U.S.C. § 1332(c)(1) ("the provision") applies to *Scott–Pontzer* claims to limit this Court's jurisdiction over such claims. Section 1332(c)(1) provides:

> [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principle place of business.

If the provision applies to this case, diversity would be destroyed because Elom and his employer are both citizens of Ohio, and Fidelity would assume the citizenship of the insured employer. Thus, for jurisdictional purposes, both plaintiff and defendant would be deemed citizens of Ohio.

 For the reasons set forth below, this Court finds that § 1332(c)(1) applies to *Scott–Pontzer* actions.[1]

*A. Interpreting 28 U.S.C. § 1332(c)(1).*

In determining the applicability of § 1332(c)(1) to *Scott–Pontzer* actions, it is necessary to interpret three ambiguous terms within the provision: "direct action," "policy or contract of liability insurance," and "insured". This Court's interpretation of these terms is guided by the decisions of the Sixth Circuit, which has given the provision a broad interpretation.

In *Ford Motor Co. v. Ins. Co. of North America*, 669 F.2d 421 (6th Cir.1982), a plaintiff-employer suffered property damage when its own employee mistakenly unloaded a catalyst delivered by a tanker truck into a resin storage container, causing an explosion. Plaintiff sued the no-fault insurer of the tanker truck company under the Michigan no-fault statute. Thus, *Ford* involved a suit against the insurer of a third-party present at the accident.

The Sixth Circuit held the provision applied to the claim in *Ford*. In doing so, the Court examined the history of the provision. The Sixth Circuit recognized that § 1332(c)(1) was adopted in response to state statutes in Louisiana and Wisconsin that permitted injured parties to sue a tortfeasor's liability insurance provider in lieu of the tortfeasor. *Ford*, 669 F.2d at 424. These statutes resulted in federal courts being flooded with state claims. *Id.* Federal diversity jurisdiction existed under the statutes because a plaintiff could sue the tortfeasor's out-of-state insurance provider in lieu of the tortfeasor who shared state citizenship with plaintiff. Therefore, the provision's stated purpose

---

1. This is currently the majority view within the Northern District of Ohio. See *Kormanik v. St. Paul Fire and Marine Ins. Co.*, 2001 WL 1850890 (N.D.Ohio 2001), *Kohus v. Hartford Ins. Co.*, 2001 WL 1850889 (N.D.Ohio 2001), *Fellows–Knox v. Genesis Ins. Co.*, 2002 WL 857217 (N.D.Ohio 2002), *Comella v. St. Paul Mercury Ins. Co.*, 177 F.Supp.2d 704 (N.D.Ohio 2001), *Estate of Monahan v. American States Ins. Co.*, 5:00cv1191 (N.D.Ohio Dec. 20, 2001), and *Stubbins v. Nationwide Agribusiness Ins. Co.*, 181 F.Supp.2d 805 (N.D.Ohio 2002).

was to restrict this "back-door diversity," which was achieved by "cloaking the non-resident insurer with the citizenship of its insured." *Id* at 424, 425.

In the Sixth Circuit's view, "Congress, when it used the terms 'direct action' and 'liability insurance' in the amendment to § 1332(c), did not intend the amendment to apply only to traditional tort claims." *Id.* at 424 citing *Aetna Casualty & Surety Ins. Co. v. Greene*, 606 F.2d 123, 126 (6th Cir.1979). As the Court explained:

> [I]f [the provision's] language encompasses other situations, we should not limit application of the amendment to the specific conditions which gave it birth. The language of the amendment is inclusive rather than exclusive.

*Id.* at 425. The Sixth Circuit found that Michigan's no-fault statute was similar to the "direct action" statutes that gave rise to § 1332(c)(1):

> [I]n one respect no-fault insurance operates exactly the same way as the Louisiana and Wisconsin direct action statutes—it permits a person claiming injury or damage arising from the ownership or use of a motor vehicle to sue the insurer rather than the owner or operator of the vehicle. Unless the proviso is held to apply, the same "back-door diversity" which Congress eliminated by the 1964 amendment [of the provision] would be possible under no-fault.

*Id.* at 425–26.

*Scott–Pontzer* actions are similar to the no-fault action in *Ford.* In both types of actions, a state law permits plaintiffs to name an insurance company as defendant without joining the tortfeasor. Additionally, the *Ford* action and *Scott–Pontzer* actions involve suits against an insurer of a third-party that is made liable by a state statute. See *Comella v. St. Paul Mercury Ins. Co.*, 177 F.Supp.2d 704, 708–709 (N.D.Ohio 2001). Moreover, the concern with back-door diversity and consequent flooding of federal courts with state claims properly decided by state courts is present in both types of actions. *Comella*, 177 F.Supp.2d at 709.

In light of the substantial similarities between the circumstances of *Ford* and of *Scott–Pontzer* actions, this Court follows *Ford* in broadly interpreting the language of § 1332(c)(1).

**B. Scott–Pontzer claims are "direct actions."**

 *Scott–Pontzer* claims are "direct actions," as the term is used in the provision. An action that can be brought without a prior judgment against a tortfeasor is a direct action. *Stockton v. General Accident Ins. Co.*, 897 F.2d 530 (6th Cir.1990). A *Scott–Pontzer* claim is a direct action because no prior judgment against the third-party tortfeasor is required to bring such a claim against the insurer. *Kormanik v. St. Paul Fire and Marine Ins. Co.*, 2001 WL 1850890 (N.D.Ohio 2001). The term "direct action" includes actions arising in contract as well as tort. *Ford*, 669 F.2d at 425. Furthermore, the "inclusive language of § 1332(c)(1) embraces all direct actions against insurers." *Ford*, 669 F.2d at 424 citing *Hernandez v. Travelers Ins. Co.*, 489 U.S. 721 (5th Cir.), cert. denied, 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974).

**C. Scott–Pontzer claims involve policies of liability insurance.**

A contract for UM/UIM coverage is a "policy or contract of liability insurance," as the term is used in § 1332(c)(1). The Sixth Circuit found no-fault insurance to be liability insurance in *Ford* because a good faith payment by the insurer discharged the "liability" (as created by the Michigan statute) of the insured. *Id.* at 425. Similarly, UM/UIM coverage is a

contract to assume the liability of someone else—the third-party tortfeasor. *Fellows–Knox*, at 797. UM/UIM coverage is by nature contractual. *Id.* at 797. Therefore, UM/UIM coverage is "a policy or contract of liability insurance." *Id.*

### D. For Scott–Pontzer claims, "insured" refers to the policy's named insured.

The term "insured," as used in § 1332(c)(1), refers to a policy's named insured—plaintiff's employer. It is the employer who buys the policy and is a party to the insurance contract. Moreover, the provision would be meaningless if the term "insured" was interpreted to mean plaintiff-employee because then the "insured" could never become a party-defendant under § 1332(c)(1). *Segura v. St. Paul Fire & Marine Ins. Co.*, 1:01cv2754 (N.D.Ohio Mar. 11, 2002).

### III. CONCLUSION

28 U.S.C. § 1332(c)(1) applies to *Scott–Pontzer* actions because *Scott–Pontzer* actions are direct actions involving policies or contracts of liability insurance in which the policy's named insured is the "insured" for jurisdictional purposes.

Because the provision applies to plaintiff's *Scott–Pontzer* claim, defendant Fidelity assumes the citizenship of its insured, Braden, an Ohio corporation. Thus, both plaintiff and defendant are deemed citizens of Ohio. As there is no full diversity of citizenship, subject matter jurisdiction is not present.

Accordingly, this case is remanded to the Ohio Court of Common Pleas for Cuyahoga County.

IT IS SO ORDERED.

### ORDER OF REMAND

This Court, having filed its Memorandum of Opinion and Order Regarding Jurisdiction, hereby remands this case to the Ohio Court of Common Pleas for Cuyahoga County, the state court from which it was removed.

A certified copy of this order of remand shall be mailed by the Clerk of the United States District Court for the Northern District of Ohio to the Clerk of the Ohio Court of Common Pleas for Cuyahoga County.

IT IS SO ORDERED.