Linda L. TYSON, Plaintiff,

v.

CONNECTICUT GENERAL LIFE IN-
SURANCE COMPANY, Defendant.

Civ. A. No. 80–71663.

United States District Court,
E. D. Michigan, S. D.

Aug. 15, 1980.

---

David B. Grant, Southfield, Mich., for plaintiff.

Kristine Galien Opperwall, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Plaintiff has filed a motion to remand this case to Wayne County Circuit Court, where it was originally filed and from which it was removed to this court by defendant.

Plaintiff, a Michigan citizen, is suing defendant insurance company, a Connecticut corporation, for its alleged wrongful failure to pay disability benefits under a group policy of insurance "applicable to [plaintiff] for sick and accident benefits, medical reimbursement and group disability income benefits." Complaint, ¶ 3. The policy sued on is not a workers' compensation policy. Plaintiff states that she was an insured under the group policy through her employment with American Motors Corporation.

Plaintiff's motion is based on 28 U.S.C. § 1332(c) which provides:

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further*, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which

the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

Plaintiff argues that the "direct action" proviso to § 1332(c) applies in this case, and operates to make the citizenship of defendant-insurer the same as that of the American Motors Corporation, plaintiff's employer. Plaintiff alleges that AMC is a Michigan corporation, and that defendant assumes that citizenship pursuant to the proviso. Thus, plaintiff argues, there is no diversity of citizenship as required by 28 U.S.C. § 1332(a), and the court therefore lacks subject matter jurisdiction of this case.

Plaintiff's motion and supporting arguments require a careful study of the scope and purpose of the proviso to § 1332(c). The direct action limitation on diversity of citizenship was originally aimed at eliminating the increased caseload of the federal district courts of Wisconsin and Louisiana after those states adopted direct action statutes which permitted an injured party to sue a foreign insurer without joining the resident injured. *Aetna Casualty & Surety Ins. Co. v. Greene*, 606 F.2d 123, 125 (6th Cir. 1979).

The court has been urged to give this proviso a narrow construction and to interpret it in such a way so as to have it apply only in the particular cases involving suits against insurance companies who agree to protect against the tort liability of the person ultimately liable. There is law to support this narrow view of the statute. *White v. U. S. Fidelity and Guaranty Co.*, 356 F.2d 746 (1st Cir. 1966); *Henderson v. Selective Ins. Co.*, 369 F.2d 143 (6th Cir. 1966); *Velez v. Crown Life Ins. Co.*, 599 F.2d 471 (1st Cir. 1979); *Irvin v. Allstate Ins. Co.*, 436 F.Supp. 575 (W.D.Okl.1977). The better reasoned cases and those cases more recently decided in this circuit suggest that such a narrow mechanical construction is not appropriate. *Aetna Casualty & Surety Ins. Co. v. Greene, supra; O. M. Greene Livestock Co. v. Azalea Meats, Inc.*, 516 F.2d 509 (5th Cir. 1975); *Hernandez v.*

*Travelers Ins. Co.*, 489 F.2d 721 (5th Cir. 1974); *McMurry v. Prudential Property and Casualty Ins. Co.*, 458 F.Supp. 209 (E.D. Mich.1978).

Thus, the applicability of § 1332(c)'s proviso has been extended beyond the tort-type actions which were burdening the courts of Wisconsin and Louisiana. In *McMurry v. Prudential Property and Casualty Ins. Co.*, *supra*, Judge Cornelia Kennedy applied the proviso to a case in which a passenger of an automobile sued the owner-driver's No-Fault insurer. In *Greene, supra*, the court held that the proviso would apply to a suit by a employee against the employer's workers' compensation insurer.

While the proviso, by its terms, is applicable to policies of "liability" insurance, *Greene* indicated the type of actions to which the proviso applies by defining the nature of a liability policy:

Congress, when it used the terms "direct action" and "liability insurance" in the amendment to § 1332(c), did not intend the amendment to apply only to traditional tort claims. We cite, at length and with approval, the reasoning of Chief Judge Frank W. Wilson in *Vines v. United States Fidelity & Guaranty Company*, 267 F.Supp. 436 (E.D.Tenn. 1967):

The term "liability insurance" is applied to contracts, which provide for indemnity against liability. . . . Liability insurance is that form of insurance by which the insured is indemnified against loss or liability on account of bodily injuries sustained by others, . . . or in a broader sense, against loss of liability on account of injuries to property. . . . A policy of liability insurance is a policy that indemnifies against the condition of becoming liable. . . . In the recent case of *Twin City Fire Insurance Company v. Wilkerson*, (E.D.Tenn.1965) 247 F.Supp. 766, the Honorable Robert L. Taylor, Chief Judge of this District had occasion to construe the term "liability insurance" as used in 28 U.S.C. § 1332(c), and said this:

Although the question is not wholly without doubt, these and other cases indicate to the Court that the term 'liability insurance' has over the years come to be accepted in the Courts as meaning an indemnity agreement which protects the insured against his liability to others, and the report of the Senate Committee on the subsection (c) amendment * * * discloses that it was this meaning that the Senate had in mind in considering the amendment * * *

*Greene, supra*, at 126.

■ Thus, when an insurer protects a third person against that person's liability to another, the insurer assumes the third person's citizenship for purposes of diversity of citizenship federal subject matter jurisdiction. The liability of the third person can arise under common law or under statute. Thus, a tort liability insurer assumes the citizenship of the tortfeasor, a workers' compensation insurer assumes the citizenship of the employer, and a No-Fault insurer assumes the citizenship of its insured. Where the third person's liability arises by operation of contract law, should the rule be any different? This court thinks not. If, for example, an employer obligates itself, either by a collective bargaining agreement with its employees' union or by an individual contract of employment to provide disability insurance to its employees or to a particular employee, the employer has created a liability to act in accordance with that contract that is enforceable in law. Contract law creates an obligation to provide disability protection binding on the employer. The insurance agreement is, in turn, an "agreement which protects the insured against his liability to others." *Greene, supra*. Thus, under the proviso in § 1332(c), the insurer "shall be deemed a citizen of the State of which the insured . . . is a citizen . . . ." In such a case, the insurer is required by law to assume, for the purpose of determining jurisdiction of the court, the same citizenship as that of the employer whose liability for disability insurance was protected by the issuance of the policy of insurance.

In this case, plaintiff was not promised disability protection pursuant to a collective bargaining agreement. Plaintiff was a nonunion, salaried employee. The record does not reflect whether the group insurance coverage provided to plaintiff was "bargained for" at the time she commenced her employment or whether it was simply a "fringe benefit." In either event, it was part of plaintiff's employment package, and thus constituted one aspect of AMC's obligation to plaintiff as its employee. See *Toussaint v. Blue Cross and Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), noted in 48 U.S.L.W. 2826 (June 24, 1980). Contracts entered into between employers and an insurance company for the benefit of the employees of the employer are enforceable by the employee beneficiary. *Corbin on Contracts*, § 807.

American Motors' obligation to plaintiff was met in part by its contract of insurance with defendant. Plaintiff is now suing defendant for benefits allegedly due her under that contract of insurance. The insurer's alleged obligation to plaintiff would not exist but for the primary obligation owed by AMC to plaintiff as a result of their employment relationship. Plaintiff is, in essence, seeking recovery from an insurer pursuant to an obligation undertaken by her employer. Thus this is a "direct action against the insurer" under the proviso in § 1332(c).

The *Greene* case, *supra*, enlightens us on this subject:

The Court next turns to the question whether this is a "direct action" within the meaning of the code section.

\* \* \* \* \* \*

Plaintiff insists that . . . the legislative history of the amendment show[s] that the amendment is applicable only to *tort* actions and thus it has no application to actions for workmen's compensation. However, the Court is of the opinion that the legislation is not subject to such a restrictive interpretation . . . The remedies provided by the Tennessee Workmen's Compensation Law are in lieu of the previous remedies in tort at common law. . . . However, the action for workmen's compensation is said to sound in contract. . . . This sort of distinction seems to be of little value in resolving the meaning of 28 U.S.C. § 1332(c), and there is no adequate basis for the inference that Congress intended that such a fine distinction be applied. *Vines, supra*, 267 F.Supp. at 437–38 (citations omitted). Accord, *Hernandez v. Travelers Insurance Company*, 489 F.2d 721, 722–23 (5th Cir. 1974), *cert. denied*, 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974). Thus, we conclude, first, that a workers' compensation insurance policy is a "policy or contract of liability insurance," and second, that a direct action on such policy is a "direct action" within the meaning of § 1332(c).

*Greene, supra*, at 126.

■ "Direct action", as used in the statute, embraces an action based on such a policy of insurance whether or not the action sounds in contract or tort. *Greene, supra*.

■ The relationship between the parties in this case is analogous to the relationship between, e. g., an injured party and a worker's compensation insurer or a No-Fault injurer. In each case, a third entity has provided a policy of insurance to provide benefits to the plaintiff and to protect the third entity against an underlying liability. In each case, the plaintiff is permitted to sue the insurance company without joining as a defendant the third entity who had the underlying liability. The application of § 1332(c)'s proviso to this case is a sound, logical application of the statute and of the holdings in *Greene* and *McMurry*.\*

---

\* The burden on federal district courts due to diversity jurisdiction is a supporting reason for result reached today. In *Greene*, the court noted that federal courts in the states which allowed direct action suits experienced a 50% increase in their civil dockets. *Greene, supra*, at 125. Diversity jurisdiction remains a significant burden of the courts, however, as is evidenced by the fact that in 1979, 98,826 private civil actions were commenced in U. S. District

There remains, however, one final factual issue. While plaintiff states that AMC is a Michigan "resident," the citizenship of that company is not clearly indicated in the record. The Corporation and Securities Bureau of the state of Michigan reports that AMC is incorporated in the state of Maryland. AMC appears to have its principal place of business in Michigan, but the court cannot overlook the possibility that it may have its principal place of business in another state. In view of plaintiff's assertion that AMC is a Michigan "resident," the fact that AMC appears to have its principal place of business in Michigan, and the fact that it is defendant who is seeking to invoke the jurisdiction of this court, this case will be retained only if defendant demonstrates to the court that AMC does not have its principal place of business in Michigan. If no information on this point is forthcoming within ten days, an order will be entered remanding this case to state court.

So ordered.

Courts, and of these 34,491 premised jurisdiction diversity of citizenship. The diversity filings in 1979 equalled a 9.1% increase over diversity filings in 1978, when 31,625 cases of a total of 91,959 private civil actions were premised on diversity jurisdiction. Annual Report of the Director—Administrative Office, U. S. Courts, p. 5 (1979). The diversity filings in 1979 constituted a 59% increase over 1969, when 21,675 of a total of 54,898 private civil cases were premised on diversity of citizenship. Annual Report of the Director of the Administrative Office of the United States Courts, p. 204 (1969).