**Judy L. REDMON, Executor of the Estate of Shelby Ann Lust, Plaintiff,**

v.

**SUMITOMO MARINE MANAGEMENT (U.S.A.), INC., Defendant.**

**No. 1:01CV1871.**

United States District Court, N.D. Ohio, Eastern Division.

Oct. 30, 2001.

Patrick T. Murphy, Bucyrus, OH, for plaintiff.

Alan H. Abes, Gregory A. Harrison, John D. Luken, Dinsmore & Shohl, Cincinnati, OH, Robert S. Marshall, Bates & Carey, Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This is an insurance contract case arising out of an automobile accident. The plaintiff, Judy L. Redmon, on behalf of the estate of Shelby Ann Lust, seeks to recover under Lust's employer's underinsured motorist contract with the defendant, Sumitomo Marine Management (U.S.A.), Inc. ("Sumitomo"). Now before the Court are Redmon's motion to remand this action to the Common Pleas Court of Crawford County, Ohio (Doc. # 14), and Redmon's motion to consolidate this case with two other pending cases arising out of the same accident (Doc. # 13). For the following reasons, this Court denies the motion to remand and grants the motion to consolidate.

### I. Background

Shelby Ann Lust, John H. Bargar II, and Heather Armstrong were occupants of a vehicle driven by Kurt Lauthers. All four died when Mr. Lauthers, apparently due to his own negligence, lost control of the car and drove off the road. Mr. Lauthers was insured by Ohio Mutual Insurance Group ("Ohio Mutual"), but his policy carried maximum per accident liability coverage of $50,000. Ohio Mutual tendered its policy limits to the estates of the three passengers. All four individuals were also employees of Imasen Bucyrus Technology, Inc. ("Bucyrus"), which had an automobile insurance contract with Sumitomo. Redmon seeks to recover under that policy's underinsured motorist clause, and filed suit in the Crawford County Court of Common Pleas. Sumitomo subsequently removed to this Court. The executor of Mr. Bargar's estate likewise filed suit in state court claiming

breach of the same insurance contract, and Sumitomo again removed. *See Bargar v. Sumitomo Marine Mgmt. (U.S.A.), Inc.,* No. 1:01CV1938 (N.D.Ohio Aug. 10, 2001). Sumitomo meanwhile filed a declaratory judgment action against the executor of the estate of the third passenger, Ms. Armstrong, and that case is also currently pending. *See Sumitomo Marine Mgmt. (U.S.A.), Inc. v. Armstrong,* No. 1:01CV1937 (N.D.Ohio Aug. 10, 2001). Redmon now moves the Court to remand this case to the Crawford County Court of Common Pleas for lack of subject matter jurisdiction. Sumitomo opposes this motion. Redmon also seeks an order consolidating this case with the companion *Bargar* and *Armstrong* cases. This motion is unopposed.

## II. Analysis

### A. Motion to Remand

In her motion to remand, Redmon argues that this Court lacks jurisdiction relying on 28 U.S.C. § 1332(c)(1), which states that

> in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as any State by which the insurer has been incorporated and of the State where it has its principal place of business.

28 U.S.C. § 1332(c)(1) (1994). Thus, while Sumitomo is a New York corporation with its principal place of business in New Jersey and Ms. Lust and Ms. Redmon as executor of her estate are Ohio residents, Redmon argues that Sumitomo is nondiverse because it is deemed to be a citizen of Ohio, the state of Lust's citizenship. The vast majority of federal courts, however, have interpreted the term "direct action" to apply only to tort actions brought by third parties against the insurer as a substitute for the insured. *See, e.g., Bowers v. Cont'l Ins. Co.,* 753 F.2d 1574, 1576 (11th Cir.1985) (holding that suits by insureds against insurers are not direct actions within the meaning of the statute); *White v. United States Fid. & Guar. Co.,* 356 F.2d 746, 747–48 (1st Cir.1966) (same); *Kimball Small Props. v. Am. Nat'l Fire Ins.,* 755 F.Supp. 1465 (N.D.Cal.1991) (same); *Field v. Liberty Mut. Ins. Co.,* 769 F.Supp. 1135, 1138 (D.Haw.1991) (same); *McGlinchey v. Hartford Accident & Indem. Co.,* 666 F.Supp. 70, 71 (E.D.Pa.1987) (same); *Smith v. State Farm Ins. Co.,* 615 F.Supp. 453, 455 (D.Haw.1985) (same). Courts reaching this conclusion have generally relied on legislative history, which suggests that "direct action" was meant by Congress as a term of art to refer to the so-called direct action statutes enacted in Louisiana and certain other states in the early 1960s, which allowed tort plaintiffs to sue a tortfeasor's insurance carrier directly, without joining the tortfeasor as a party. *See Rosa v. Allstate Ins. Co.,* 981 F.2d 669, 674–75 (2d Cir.1992) (summarizing the relevant legislative history). Since these statutes often had the effect of removing nondiverse tortfeasors from basic tort actions, many federal courts saw an increase of up to 50% in their caseloads due largely to insurers' newfound ability to remove tort actions brought by diverse plaintiffs. The insurance provision of section 1332(c)(1) was enacted to respond to this problem by narrowing the diversity jurisdiction of federal district courts. *Id.* Most courts interpreting the provision have therefore ignored its seemingly broad language in favor of a narrow interpretation based on legislative intent.

The Sixth Circuit, however, has given the insurance provision of section 1332(c)(1) an unusually expansive reading.

See Ford Motor Co. v. Ins. Co. of N. America, 669 F.2d 421, 424 (6th Cir.1982) (adopting the broad reading of section 1332(c)(1) applied by some Sixth Circuit and Fifth Circuit courts). More specifically, the Sixth Circuit has held that the provision should not be limited only to the tort context, but should be extended to encompass some contract actions as well. Aetna Cas. & Sur. Ins. Co. v. Greene, 606 F.2d 123, 126 (6th Cir.1979). Thus, in Ford and Greene, the Sixth Circuit held that an insurer should be deemed a citizen of the state of its insured in no-fault insurance and workers compensation cases. In Greene, the plaintiff sued his employer's workers compensation insurer directly for failure to pay a claim, and the Sixth Circuit attributed the employer's citizenship to the insurer. Id. at 126–27. In Ford, the employer was itself the injured party and plaintiff. The Ford court, however, cited approvingly Tyson v. Conn. Gen. Life Ins. Co., 495 F.Supp. 240 (E.D.Mich.1980), where a plaintiff-employee sued his employer's group health and disability insurer directly for failure to pay a claim, and the court deemed the insurer a citizen of the insured employer's state, destroying diversity. Ford, 669 F.2d at 425 (citing Tyson, 495 F.Supp. at 243). Taken together, the Ford and Greene decisions stand for the proposition that a direct action can sound in either contract or tort, can be brought against the insurer of the plaintiff-employee's employer, and can be based on any policy of "liability insurance," broadly defined as "a policy that indemnifies against the condition of becoming liable." Greene, 606 F.2d at 126 (internal quotation omitted).

██ After the Ohio Supreme Court's opinion in Scott–Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), employees, even when acting outside the scope of employment, can recover under their employer's uninsured/underinsured motorist ("UIM") policies unless the insurance contract explicitly limits coverage to the insured corporate entity and excludes individual employees. Scott–Pontzer, 710 N.E.2d at 1119–20. In this case, Redmon seeks to recover under Lust's employer's UIM policy with Sumitomo. For the purposes of this order, the Court assumes, without deciding, that Lust was an insured driving an insured automobile under Bucyrus's UIM policy with Sumitomo. This Court must therefore decide whether this breach of contract action brought directly against the plaintiff's employer's UIM insurer constitutes a direct action within the meaning of section 1332(c)(1) under relevant Sixth Circuit precedent. Upon a closer reading of Greene and Ford, this Court concludes that it does not.

It is worth noting, preliminarily, that Ford has been roundly criticized both outside the Sixth Circuit and by lower courts within the Sixth Circuit. See, e.g., Rosa, 981 F.2d at 674–75; Spooner v. Paul Revere Life Ins. Co., 578 F.Supp. 369, 372–73 (E.D.Mich.1984); Kosmyna v. Bankers Life & Cas. Co., 550 F.Supp. 142, 143–44 (E.D.Mich.1982). In particular, at least two courts have noted that Ford's approval of Tyson, in which a plaintiff-employee's suit against his insured employer's disability insurer was dismissed for lack of diversity, appears to have been based on a misreading of that case as one involving no-fault insurance. See Spooner, 578 F.Supp. at 372; Kosmyna, 550 F.Supp. at 144. These courts subsequently rejected Tyson and held that section 1332(c)(1)'s insurance provision does not apply to destroy diversity when a plaintiff-employee sues his employer's disability insurer. Spooner, 578 F.Supp. at 373; Kosmyna, 550 F.Supp. at 144. As the Kosmyna court noted, "[u]nder the terms of a disability income policy, the insured is not the

employer, but the employee. The insured, contrary to the assertion in *Tyson*, is not protected against incurring liability to others. The insured employee is merely protected against loss of income." 550 F.Supp. at 143. The court in *Spooner* aptly summarized the distinction:

> The application of [section 1332(c)(1)'s insurance] proviso to an insurance company in the typical tort action is proper because the tortfeasor has purchased the policy as protection against liability arising from his breach of a duty owed to the injured party. The typical action is such that the act for which liability is sought to be imposed against the insurance company is the same act for which liability could be imposed against the insured. In this sense, the insurance company derives its liability from the insured. With the 1964 amendment, Congress intended that the insurer derive its citizenship from the insured as well. In contrast, in actions such as the case at hand, the injured party could not seek to impose liability on the insurance company and the employer for the same act. The employer did not take any action for which the plaintiff now seeks recovery.

*Spooner*, 578 F.Supp. at 373 (citing *Kosmyna*, 550 F.Supp. at 143).

This Court finds the *Spooner* and *Kosmyna* analyses persuasive. While, at first blush, this action against Lust's employer's UIM insurer arguably fits within the purview of the Sixth Circuit's unusually expansive reading of section 1332(c)(1)'s insurance provision in *Greene* and *Ford*, a closer reading of those opinions suggests that their language swept more broadly than their underlying reasoning can support. *Ford* was ultimately an easy case. An employer sued a tortfeasor's no-fault insurer directly for property damage rather than suing the actual tortfeasor. In such a case, no-fault insurance, while contractual in nature, acts as a substitute for tort liability, and the no-fault insurer—a phenomenon that did not exist when section 1332(c)(1) was enacted—stands in place of the tortfeasor in a manner strikingly similar to that originally envisioned by Congress in addressing the direct action problem. The no-fault insurer protects the tortfeasor from liability to the injured plaintiff in a manner comparable to the traditional tort liability insurer. Thus, it is appropriate to apply section 1332(c)(1)'s insurance provision in the no-fault insurance context. Likewise, *Greene* dealt with a relatively straightforward scenario. The injured plaintiff-employee sued the insured employer's workers compensation insurer directly. In this sort of case, the plaintiff attempts to recover for an injury sustained on the job, for which the employer would otherwise be liable. The employer in this type of case is therefore like the insured tortfeasor in the typical direct action case, and workers compensation insurance steps in to shield the employer from liability to the injured plaintiff.

UIM policies, however, are similar to the group health and disability plans at issue in *Spooner* and *Kosmyna*. In those cases, the courts concluded that the insurance policy did not shield the employer from any liability to the plaintiff-employee, because the plaintiffs' claims did not seek to recover for any breach of duty on the employer's part. In other words, the insured was not actually an employer protected against incurring liability to others, but rather the employee, who was protected against loss of income. UIM policies serve a similar purpose. The UIM insurer protects its insured against excess losses beyond those covered by the actual liability insurer. In this case, that liability insurer is Ohio Mutual, which stands in the place of the tortfeasor and protects him

against incurring liability to others. An action against Ohio Mutual, not Sumitomo, would therefore constitute a direct action, and, were Ohio Mutual not already an Ohio citizen, section 1332(c)(1) would apply to destroy diversity. In contrast, the UIM policy, if it is found to cover the injured parties here, would merely step in to fill the gap between the Ohio Mutual policy limit and the actual damages suffered by the plaintiff. This action is therefore not a direct action against the insurer of a policy of liability insurance within the meaning of the statute and this case is within this Court's diversity jurisdiction.

Courts facing this issue in other jurisdictions have agreed that contract actions on UIM policies are not within the scope of section 1332(c)(1)'s insurance provision. *See, e.g., Myers v. State Farm Ins. Co.,* 842 F.2d 705, 707 (3d Cir.1988) (holding that a passenger's action against his driver's insurer to obtain UIM coverage was not a direct action within the meaning of the diversity jurisdiction statute); *Field v. Liberty Mut. Ins. Co.,* 769 F.Supp. 1135, 1138 (D.Haw.1991) (holding that a passenger's action against his own insurer to obtain UIM coverage was not a direct action within the meaning of the statute); *Barton v. Allstate Ins. Co.,* 729 F.Supp. 56, 57 (W.D.Tex.1990) (same); *State Farm Ins. Co. v. Evans,* 712 F.Supp. 57, 58–59 (E.D.Pa.1989) (same); *Couvillion v. State Farm Mut. Auto. Ins. Co.,* Civ–A–No. 94–1521, 1994 WL 382631, at *1 (E.D.La. July 19, 1994) (same). Furthermore, at least one opinion has suggested that the Sixth Circuit may be ready to cut back on its previously broad reading of the direct action insurance provision of section 1332(c)(1). *See Stockton v. Gen. Acc. Ins. Co.,* No. 89–5492, 1990 WL 20477, at *3 (6th Cir. Mar.6, 1990) ("The general understanding in this circuit has been that the term 'direct action,' as used in the proviso, means an action that under applicable state law may be brought directly against the insurer by the tort claimant prior to entry of any judgment against the alleged tortfeasor." (citing *Henderson v. Selective Ins. Co.,* 369 F.2d 143, 149 (6th Cir.1966))). The motion to remand for lack of subject matter jurisdiction must therefore be denied.

## B.  Motion to Consolidate

Federal Rule of Civil Procedure 42(a) allows a district court to consolidate any "actions involving a common issue of law or fact ... pending before the court" and to issue any orders that "may tend to avoid unnecessary costs or delay." Fed. R.Civ.Pro. 42(a). In this case, all three passengers of the car driven by Mr. Lauthers were Bucyrus employees, and all three passengers' estates are parties to lawsuits seeking recovery under Bucyrus's insurance policy with Sumitomo. Because the same factual and legal issues will be presented in all three cases, because unnecessary costs and delay can be avoided by consolidating the cases, and because Sumitomo supports Redmon's motion to consolidate and neither Bargar nor Armstrong object, the Court finds that consolidation is warranted.

## Conclusion

For these reasons, Redmon's motion to remand is denied and Redmon's motion to consolidate is granted. It is therefore ordered that Case No. 1:01CV1937 and Case No. 1:01CV1938 are consolidated with this case and that all subsequent papers, pleadings, and motions shall be filed with this Court.

IT IS SO ORDERED.