Mark PETERSON, et al., Plaintiffs,

v.

TIG SPECIALTY INSURANCE COMPANY, Defendant.

No. C–2–02–311.

United States District Court, S.D. Ohio, Eastern Division.

July 26, 2002.

Gary Edward Fisher, Columbus, OH, for Plaintiffs.

Jill S. Patterson, Harry Sigmier, Therese P. Joyce, Weston, Hurd, Fallon, Paisley & Howley—2, Cleveland, OH, for Defendant.

## ORDER

GRAHAM, District Judge.

Upon *de novo* review, this court hereby adopts and accepts the Report and Recommendation of Magistrate Judge Mark R. Abel. Plaintiffs' motion to remand id DE-NIED, and plaintiffs' motion for reconsideration of the Report and Recommendation is likewise DENIED.

It is so ORDERED.

Report and Recommendation

ABEL, United States Magistrate Judge.

Plaintiffs Mark Peterson and his wife and two children brought this action in the

Court of Common Pleas for Delaware County, Ohio against defendant TIG Specialty Insurance Company. Peterson sustained injuries in an automobile accident on August 30, 2000. The accident was caused by the negligence of Aaron Hodges. Peterson collected the policy limits from the personal automobile liability insurer of the tortfeasor. He now seeks to collect uninsured/underinsured motorists ("UM/UIM") coverage under the commercial motorists liability policies held by The Ohio State University, Peterson's employer, with TIG. Defendant removed the case to this Court, alleging diversity jurisdiction.

This matter is before the Magistrate Judge for a Report and Recommendation on plaintiffs' April 24, 2002 motion to remand (doc. 6). Although Peterson is a resident of Ohio and TIG is a California corporation with its principal place of business in Texas, plaintiffs maintain that there is not complete diversity between the parties because this is a "direct action against the insurer of a policy or contract of liability insurance ... to which action the insured is not joined as a party-defendant" within the meaning of 28 U.S.C. § 1332(c)(1). In such actions, the "insurer shall be deemed a citizen of the State of which the insured is a citizen...." 28 U.S.C. § 1332(c)(1). Since the insureds (plaintiffs and the employer) are citizens of Ohio, they maintain TIG should be deemed a citizen of Ohio.

This argument fails, as discussed in greater detail below, because this is not a "direct action." As the legislative history makes clear, a "direct action" is a suit brought by a tort victim—not against the tortfeasor—but "directly" against the tortfeasor's insurer.

Peterson is the *victim* of a tort. He has recovered policy limits against the tortfeasor's insurer. He now sues what he alleg-es is *his own insurer* (TIG), seeking to recover under the UM/UIM clause of the policy. Thus, under its literal language, § 1332(c)(1) is inapplicable. While this may arguably be a suit "against an insurer of a policy or contract of liability insurance" (the UM/UIM clause), it is not a suit "to which action the insured is not joined as a party defendant." The insured *is* the plaintiff. This is not a suit to which the insured could, by any reading of the language of § 1332(c)(1), ever be joined as a party-defendant.

## I. Background

Peterson's claim rests on the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). In *Scott–Pontzer*, the court interpreted Ohio Rev. Code § 3937.18, the insurance statute that sets out UM/UIM coverage requirements in Ohio, to mean that an employee may recover under the UM/UIM coverage of his employer's commercial automobile liability policy. This is true even when the employee was not acting in the scope of employment at the time of the accident. 85 Ohio St.3d at 666, 710 N.E.2d at 1120.

TIG removed the action to this Court on the grounds of diversity jurisdiction. *See* 28 U.S.C. § 1332. Peterson and his family are residents of Ohio. TIG is a California corporation with its principal place of business in Texas. Peterson's employer, The Ohio State University, is a citizen of Ohio. Peterson has moved to remand on the ground that there is not complete diversity of citizenship. Peterson argues that under § 1332(c)(1), TIG must take the citizenship of The Ohio State University.

## II. Discussion

### A. Section 1332(c)(1)

Section 1332(c) provides,

For the purposes of this section and section 1441 of this title—

(1) a corporation shall be deemed to· be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.... 28 U.S.C. § 1332(c)(1).

Congress added this proviso to § 1332(c) in response to the sharp increase in the federal court caseload after Louisiana enacted a direct action statute. *See Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 9–10, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989); *Ford Motor Co. v. Ins. Co. of N. Am.*, 669 F.2d 421, 424 (6th Cir.1982). The direct action statute permitted a person claiming injury at the hands of another to sue the tortfeasor's liability insurance carrier rather than the tortfeasor. "By cloaking the nonresident insurer with the citizenship of its insured, Congress removed the basis of diversity jurisdiction." *Ford Motor Co.*, 669 F.2d at 424.

█ Courts have consistently interpreted "direct action" to include only tort actions brought by third parties against the insurer—as a substitute for the insured tortfeasor. *See, e.g., Bowers v. Cont'l Ins. Co.*, 753 F.2d 1574, 1576 (11th Cir.1985); *Kimball Small Props. v. Am. Nat'l Fire Ins.*, 755 F.Supp. 1465 (N.D.Cal.1991); *McGlinchey v. Hartford Accident & Indem. Co.*, 666 F.Supp. 70, 71 (E.D.Pa. 1987). One court summarized the rule as follows:

[A] "direct action" for purposes of this section [is] one "in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurance without joining the insured or first obtaining a judgment against him." *Beckham v. Safeco Ins. Co. of America*, 691 F.2d 898, 901–02 (9th Cir.1982). In other words, this direct action exception that destroys diversity exists only where a third-party tort victim forgoes suing the tortfeasor in favor of instead suing the tortfeasor's liability insurer directly. This is the universal rule. *See, e.g., Myers v. State Farm Ins. Co.*, 842 F.2d 705, 707 (3d Cir.1988); *Fortson v. St. Paul Fire & Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir.1985), *reh. denied*, 757 F.2d 287; *White v. United States Fidelity and Guaranty Co.*, 356 F.2d 746, 747–48 (1st Cir.1966).

*Vargas v. California State Auto. Ass'n Inter–Ins. Bureau*, 788 F.Supp. 462, 463 (D.Nev.1992).

Plaintiffs argue that the Sixth Circuit "broadened" § 1332(c)(1) in *Ford Motor Co.*, 669 F.2d at 425. However, what was broadened in *Ford* was not the terms of art "direct action" or "to which action the insured is not joined as a party-defendant," but the definition of "a policy or contract of liability insurance." The Sixth Circuit held that the latter term was broad enough to encompass a no-fault insurance policy because no-fault statutes displaced traditional tort liability laws. *Id.* ("No-fault has been substituted for tort liability in Michigan....").

In all other respects, *Ford* is indistinguishable from the long line of cases construing a direct action as a suit by a tort victim brought against the tortfeasor's insurer without joining the tortfeasor. That is, *Ford* was a tort victim—its property

was damaged when Refiners Transport delivered a catalyst to a Ford facility, the catalyst was mistakenly poured into a resin tank, and the tank exploded. Ford sued Refiner Transports' no-fault insurer, Insurance Company of North America, but did not join the alleged tortfeasor. Thus, *Ford* is a classic "direct action" suit, with the only variant being that a no-fault policy was held to be "a policy or contract of liability insurance."

The argument that this is a direct action under *Ford* hangs on *Ford's* approving citation to *Tyson v. Connecticut General Life Ins. Co.,* 495 F.Supp. 240 (E.D.Mich. 1980). In *Tyson,* plaintiff employee sued his employer's group health insurer. The district court held that the insurer was deemed a citizen of the employer's state, thus destroying diversity. 495 F.Supp. at 243. Similarly, in *Aetna Cas. & Sur. Ins. Co. v. Greene,* 606 F.2d 123, 126 (6th Cir. 1979), plaintiff sued his employer's workers compensation insurer for failure to pay a claim. The Sixth Circuit attributed the employer's citizenship to the insurer. *Id.* at 126–27.

In support of their motion to remand, plaintiffs cite several recent decisions from the U.S. District Court for the Northern District of Ohio which have interpreted "direct action" to include suits brought pursuant to *Scott–Pontzer.* Defendant, in turn, also cites cases from the Northern District cases which have declined to interpret "direct action" to encompass *Scott–Pontzer* suits.

## B. Northern District Cases Ordering Remand

The Northern District initially dealt with the direct action issue in the unpublished decision of *Kormanik v. St. Paul Fire and Marine Ins. Co.,* 208 F.Supp.2d 824 (2001). Relying on *Ford* to broadly interpret § 1332(c)(1), Judge Polster concluded that a *Scott–Pontzer* suit was a direct action. Noting the "burgeoning number" of *Scott–Pontzer* cases, the court found that the same reasons for which the direct action proviso was enacted applied with "equal force to *Scott–Pontzer* actions." Slip op. at 4. The court also believed that state courts, rather than federal district courts, should handle the task of addressing any unsettled issues left in the wake of *Scott–Pontzer. Id.*

Several more Northern District decisions have followed *Kormanik's* holding. In *Comella v. St. Paul Mercury Ins. Co.,* 177 F.Supp.2d 704 (N.D.Ohio 2001), Judge O'Malley likewise relied on *Ford* to hold that the case was a direct action. The court drew upon the statement in *Ford* that "if [the statute's] language encompasses other situations, we should not limit application of the [diversity-limiting provision] to the specific conditions which gave it birth," 669 F.2d at 425, to find support for the position that § 1332(c)(1) could be applied to *Scott–Pontzer* actions. 177 F.Supp.2d at 707. The court found a commonality with *Ford* which led it to conclude that a *Scott–Pontzer* action was a direct action: "But in both this case and in *Ford,* it is an artifact of state law that permits a plaintiff to: (a) name an insurance company as a defendant (b) without naming the tortfeasor as a party (c) to recover damages caused by the absent tortfeasor." *Id.* at 708–09.

The court further held that UM/UIM coverage constituted liability coverage under § 1332(c)(1).

[The Ohio Supreme Court's] statutory interpretation, "like the no-fault statute examined in *Ford,* represents a latter-day attempt by the state[ ] to improve the mechanism for recovery by those injured and damaged in accidents arising out of the use of motor vehicles." [669 F.2d] at 425–26. In particular, the

Ohio Supreme Court's statutory interpretation creates insurance coverage by operation of law, even though this "result ... was not intended by the parties to the insurance contracts at issue." *Scott–Pontzer,* 710 N.E.2d at 1120–21. In both the instant case and in *Ford,* state law allows a plaintiff to sue directly an otherwise unobligated insurer to recover the tortfeasor's liability.

*Id.* at 708.

Judges Karr and Katz have adopted the reasoning of *Kormanik* and *Comella* in remanding *Scott–Pontzer* actions. *See Stubbins v. Nationwide Agribusiness Ins. Co.,* 181 F.Supp.2d 805 (N.D.Ohio 2002) (Karr, J.); *Griffin v. Wausau Ins. Cos.,* 189 F.Supp.2d 714 (N.D.Ohio 2002) (Katz, J.); *Butler v. Zurich Am. Ins. Co.,* 184 F.Supp.2d 695 (N.D.Ohio 2002) (Katz, J.).

### C. Northern District Cases Denying Remand

Several judges of the Northern District have found that the direct action proviso does not apply and therefore have retained jurisdiction of *Scott–Pontzer* cases. In *Redmon v. Sumitomo Marine Management (U.S.A.), Inc.,* 179 F.Supp.2d 787 (N.D.Ohio 2001), Judge Aldrich found that the traditional interpretation of "direct action," based on the proviso's legislative history, mandated a narrow application of § 1332(c)(1). 179 F.Supp.2d at 789 (citing cases). The court declined to adopt an expansive approach under *Ford,* noting that the decision appeared to be based on a misreading of *Tyson* as a case involving no-fault insurance. *Id.* at 790–91. The court further noted that *Ford* has been "roundly criticized both outside the Sixth Circuit and by lower courts within the Sixth Circuit." *Id.* at 790 (citing cases).

The court found two decisions from the Eastern District of Michigan persuasive. *See Spooner v. Paul Revere Life Ins. Co.,*

578 F.Supp. 369, 372–73 (E.D.Mich.1984); *Kosmyna v. Bankers Life & Cas. Co.,* 550 F.Supp. 142, 143–44 (E.D.Mich.1982). Both cases rejected *Tyson* and held that § 1332(c)(1) does not apply to destroy diversity when a plaintiff-employee sues his employer's disability insurer. *Spooner,* 578 F.Supp. at 373; *Kosmyna,* 550 F.Supp. at 144. The court likened UIM policies to the group health plans at issue in *Spooner* and *Kosmyna* and held:

The UIM insurer protects its insured against excess losses beyond those covered by the actual liability insurer. In this case, that liability insurer is Ohio Mutual, which stands in the place of the tortfeasor and protects him against incurring liability to others. An action against Ohio Mutual, not Sumitomo, would therefore constitute a direct action, and, were Ohio Mutual not already an Ohio citizen, section 1332(c)(1) would apply to destroy diversity. In contrast, the UIM policy, if it is found to cover the injured parties here, would merely step in to fill the gap between the Ohio Mutual policy limit and the actual damages suffered by the plaintiff. This action is therefore not a direct action against the insurer of a policy of liability insurance within the meaning of the statute and this case is within this Court's diversity jurisdiction.

*Id.* at 791–92.

In *Fidelity and Guar. Ins. Underwriters, Inc. v. Nocero,* No. 1:01CV397, 2001 WL 1792448 (N.D.Ohio Dec. 13, 2001), Judge Gaughan applied largely the same logic in finding that a *Scott–Pontzer* suit is not a direct action under § 1332(c)(1). The court further held that a UM/UIM policy is not a "policy or contract of liability insurance." 2001 WL 1792448, at *4. A policy of liability insurance is an indemnity agreement protecting the insured against liability to others. *Id.* (citing *Twin City*

*Fire Ins. Co. v. Wilkerson,* 247 F.Supp. 766, 767 (E.D.Tenn.1965)). In contrast, "a cause of action involving UM/UIM coverage sounds in contract, rather than tort, law.... UM/UIM coverage does not indemnify an insured against loss or liability on account of personal or property injury to others." *Id.* (citations omitted). Instead, the court stated, UM/UIM coverage provides "protection to an insured who is legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle because of injury to the insured herself." *Id.*

Judge Nugent adopted the reasoning of *Redmon* and *Nocero* in an unpublished opinion. *See Johnson v. Fireman's Fund Ins.,* No. 1:01CV1063 (Jan. 15, 2002).

### D. Analysis

■ I find the later group of Northern District cases—those holding that *Scott–Pontzer* suits are not direct actions—more persuasive. I believe *Kormanik's* and *Comella's* reliance on *Ford* is misguided. What was broadened in *Ford* was not "direct action," but the definition of "a policy or contract of liability insurance." The Sixth Circuit held that a suit based on a no-fault insurance statute and policy issued thereunder, while sounding more in contract law than in tort law, fell within § 1332(c)(1) because the no-fault policy was a policy of "liability insurance."

I do not believe that *Ford* authorizes the further extension of § 1332(c)(1) to *Scott–Pontzer* cases. While the court cited *Tyson* with approval, it did so under the apparent misconception that the case involved no-fault insurance. *See Spooner,* 578 F.Supp. at 372; *Kosmyna,* 550 F.Supp. at 144. Looking only at *Ford's* holding on the facts before the court, the decision comports with the traditional understanding of "direct action." In *Ford,* plaintiff sued a third-party insurer. By operation of state law, no-fault insurance substituted for tort liability, and the no-fault insurer stood in the shoes of the tortfeasor. "The no-fault insurer protects the tortfeasor from liability to the injured plaintiff in a manner comparable to the traditional tort liability insurer." *Redmon,* 179 F.Supp.2d at 791.

■ *Scott–Pontzer* cases are decidedly different. Plaintiff sues his own employer's insurer. The tortfeasor's insurer is, by this time, out of the picture. Under the Ohio Supreme Court's ruling, the plaintiff-employee is by definition an "insured." *Scott–Pontzer,* 85 Ohio St.3d at 665, 710 N.E.2d at 1119 ("[W]e conclude that Pontzer, at the time of his death, was an insured under the Liberty Fire policy for purposes of underinsured motorist coverage."). Thus, the insured is suing his insurer. Such an action does not fall within the scope of § 1332(c)(1). *See, e.g., McGlinchey v. Hartford Accident & Indemnity Co.,* 866 F.2d 651, 653 (3d Cir. 1989) (holding action by insured against insurer on UM/UIM provision is not a direct action under § 1332(c)(1)); *Bowers v. Continental Ins. Co.,* 753 F.2d 1574, 1576 (11th Cir.1985) ("The general rule has always been that the direct action proviso does not affect suits brought by an insured against his own insurer."); *White v. U.S. Fidelity & Guaranty Co.,* 356 F.2d 746 (1st Cir.1966) (holding that suit by insured against insurer is not a direct action); *Stockton v. General Accident Insurance Co.,* No. 89–5492, 1990 WL 20477, at *3 (6th Cir. March 6, 1990) ("The general understanding in this circuit has been that the term 'direct action,' as used in the proviso, means an action that under applicable state law may be brought directly against the insurer by the tort claimant prior to entry of any judgment against the alleged tortfeasor.").

As the Second Circuit has stated:

Because the § 1332(c) proviso is designed to address cases in which an insured may be, but is not, joined as a party-defendant, it would be inappropriate for the proviso to affect situations where a person characterizable as an insured party sues the insurer, since a plaintiff obviously cannot join herself as a party-defendant.

*Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 678 n. 18 (2d Cir.1992); *see also Redmon,* 179 F.Supp.2d at 792 (citing cases holding that contract actions on UIM policies do not fall within § 1332(c)(1)'s direct action proviso).

The Sixth Circuit's decision in *Aetna Cas. & Sur. Ins. Co. v. Greene,* 606 F.2d 123, 126 (6th Cir.1979), does not extend "direct action" to suits where an insured is suing his own insurer. In *Greene,* plaintiff sued his employer's workers compensation insurer, attempting to recover for an injury sustained on the job. The injury—since it occurred on the job—was one for which the employer would otherwise be liable. "The employer in this type of case is therefore like the insured tortfeasor in the typical direct action case, and workers compensation insurance steps in to shield the employer from liability to the injured plaintiff." *Redmon,* 179 F.Supp.2d at 791. Here, Peterson's injury resulted from the negligence of another; as The Ohio State University's insurer, TIG in no way acts as the insurer of the tortfeasor.

I believe the Northern District cases finding *Scott–Pontzer* actions to be direct actions ignore the plain language of § 1332(c)(1). They cannot be reconciled with the long line of cases consistently construing the statute to apply only to actions brought by a tort victim directly against a tortfeasor's insurer without joining the tortfeasor. *See, e.g., Kimball Small Props. v. Am. Nat'l Fire Ins.,* 755 F.Supp. 1465 (N.D.Cal.1991) (holding that suit by insured against insurer is not a

direct action); *Field v. Liberty Mut. Ins. Co.,* 769 F.Supp. 1135 (D.Haw.1991) (same). Unlike a direct action in tort law where the insurer stands in the shoes of the insured, the insurer in a *Scott–Pontzer* suit is not standing in the shoes of the employer-insured. "There is no act for which liability can be imposed on both the insured and the insurer." *Nocero,* 2001 WL 1792448, at *7. By no means is this a suit to which the insured could ever be joined as a party-defendant.

Certainly *Kormanik* and *Comella* raise valid policy concerns. The increase in *Scott–Pontzer* cases before federal district courts in Ohio is remindful of the increased federal caseload in Louisiana which prompted the passage of § 1332(c)(1). As a matter of sound public policy it may be that Congress would decide, if presented with the problem, that § 1332(c)(1) should be amended to provide that when claims are brought by a tort victim against his (or a family member's) employer's insurer, the insurer is deemed to have the same residence as the employer (or the employer's place of business). But those policy considerations cannot justify an interpretation of § 1332(c)(1) beyond its reasonable bounds. *See National Life & Accident Ins. Co. v. United States,* 524 F.2d 559, 560 (6th Cir.1975) (courts must give effect to "the natural and plain meaning [of] statutes as passed by Congress").

To the extent unsettled issues remain in the wake of *Scott–Pontzer,* perhaps *Kormanik* may be correct that state courts should be the ones resolving these issues. However, Judges Gwin and Dowd handled *Scott–Pontzer* suits on the merits in two recent decisions with seemingly no difficulty. *See Lepley v. Hartford Acc. and Indem. Co.,* 174 F.Supp.2d 656 (N.D.Ohio 2001); *Martin v. Liberty Mut. Ins. Co.,* 187 F.Supp.2d 896 (N.D.Ohio 2001). In

diversity suits, federal courts routinely apply and follow the law of the state on which claims and defenses of the parties are based. *Scott–Pontzer* cases are indistinguishable from any other diversity case presenting state law issues of contract construction.

While it is true that *Scott–Pontzer* was decided in 1999 and there are issues yet unresolved by the Supreme Court of Ohio, the area of the law is remarkably well-developed considering its recent origin. The Supreme Court of Ohio has issued one further decision,[1] and there are many Ohio Court of Appeals decisions as well.[2] There is very little uncharted territory remaining. And this Court is bound by that body of Ohio law.

### III. Conclusion

Accordingly, it is RECOMMENDED that plaintiffs' April 24, 2002 motion to remand (doc. 6) be DENIED.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b).

· The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the

right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150–152, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989).

June 6, 2002.

---

**1.** *See Linko v. Indemnity Ins. Co. of Am.*, 90 Ohio St.3d 445, 739 N.E.2d 338 (2000). The Ohio Supreme Court has also issued four summary reversals, which—for the reasons explained in Justice Stratton's dissents—expand the reach of *Scott–Pontzer. See Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999); *Estate of Dillard v. Liberty Mut. Ins. Co.*, 86 Ohio St.3d 316, 715 N.E.2d 126 (1999); *Bagnoli v. Northbrook Prop. & Cas. Ins. Co.*, 86 Ohio St.3d 314, 715 N.E.2d 125 (1999); *Headley v.*

*Ohio Govt. Risk Mgt. Plan*, 86 Ohio St.3d 64, 711 N.E.2d 679 (1999).

**2.** Recent decisions include: *Geren v. Westfield Ins. Co.*, No. L–01–1398, 2002 WL 360714 (Ohio App. 6 Dist. March 8, 2002); *Batteiger v. Allstate Ins. Co.*, No.2001 CA 37, 2002 WL 242513 (Ohio Ct.App. Feb. 15, 2002); *Robart v. Horvath*, No. 01CA0031, 2002 WL 185179 (Ohio Ct.App. Feb. 6, 2002); *Reinbolt v. Gloor*, 146 Ohio App.3d 661, 767 N.E.2d 1197 (2001).